## P. A. WENBERG v. GIBBS TOWNSHIP.

### (153 N. W. 440.)

**Congress — right of way — granting — highways — construction of — certified plat — location — filing of — superior title.**

The act of Congress approved July 26, 1866, granting a right of way for the construction of highways over public lands not reserved for public use, attached to and created a superior title therein to the grant of such lands to the Northern Pacific Railroad Company, under act of Congress approved July 2, 1864, because the certified plat of definite location of said road, containing the tract afterwards deeded to plaintiff, was not filed with the commissioner of the general land office until May 26, 1873, and did not apply to any interest in said lands previously granted to the public by the United States government.

Opinion filed March 16, 1915. Rehearing denied June 7, 1915.

Appeal from the District Court of Burleigh County, *Nuessle, J.*
Affirmed.

*Newton, Dullam, & Young,* for appellant.

Chapter 33 of the Laws of 1871 of the Territory of Dakota, providing that all section lines in the territory be and are declared public highways, amounts to an acceptance of the Federal grant. Walcott Twp. v. Skauge, 6 N. D. 382, 71 N. W. 544; Keen v. Fairview Twp. 8 S. D. 558, 67 N. W. 623; Wells v. Pennington County, 2 S. D. 1, 39 Am. St. Rep. 758, 48 N. W. 305; Tholl v. Koles, 65 Kan. 802, 70 Pac. 881; Wallowa County v. Wade, 43 Or. 253, 72 Pac. 793; Streeter v. Stalnaker, 61 Neb. 205, 85 N. W. 47.

The lands over which the highway is laid out in the case at bar were a part of the grant made by the government to the Northern Pacific Railway Company by act of Congress of 1864. The map of definite location of the line of road was not filed till in 1873. Such grant, however, was *in præsenti,* and took effect as of the date of the act of Congress. Buttz v. Northern P. R. Co. 119 U. S. 55, 30 L. ed. 330, 7 Sup. Ct. Rep. 100; St. Paul & P. R. Co. v. Northern P. R. Co. 139 U. S. 1, 35 L. ed. 77, 11 Sup. Ct. Rep. 389; Bardon v. Northern P. R. Co. 145 U. S. 535, 36 L. ed. 806, 12 Sup. Ct. Rep. 856; Northern Lumber Co. v. O'Brien, 204 U. S. 190, 51 L. ed. 438, 27 Sup. Ct. Rep. 249; Walbridge v. Russell County, 74 Kan. 341, 86 Pac. 473; St. Louis & S. F. R. Co. v. Love, 29 Okla. 523, 118 Pac. 261.

*H. R. Berndt,* State's Attorney, for respondent.

The act of Congress of July, 1864, created no reservation for "public uses." Hence, all lands within the then territory of Dakota remained, where not reserved for public uses, public lands of the United States. Menotti v. Dillon, 167 U. S. 703, 42 L. ed. 333, 17 Sup. Ct. Rep. 945; Kansas P. R. Co. v. Dunmeyer, 113 U. S. 629–644, 28 L. ed. 1122–1127, 5 Sup. Ct. Rep. 566; United States v. Southern P. R. Co. 146 U. S. 570, 36 L. ed. 1091, 13 Sup. Ct. Rep. 152; Northern P. R. Co. v. Sanders, 166 U. S. 620, 41 L. ed. 1139, 17 Sup. Ct. Rep. 671.

The railway company acquired by fixing its general route, only an inchoate right to the odd-numbered sections granted by Congress, and no right attached to any specific section until the road was definitely located, and the map thereof filed and accepted. Until such definite location it was competent for Congress to dispose of the public lands on

the general route of the road, as it saw proper. Barden v. Northern P. R. Co., 154 U. S. 288, 38 L. ed. 992, 14 Sup. Ct. Rep. 1030; St. Paul & P. R. Co. v. Northern P. R. Co. 139 U. S. 1, 35 L. ed. 77, 11 Sup. Ct. Rep. 389.

Pending the grant to the Northern Pacific Railroad, Congress, in 1866, granted "the right of way for construction of highways over public lands not reserved for public uses," and, in 1871, the legislative assembly of the territory of Dakota, by enactment of January 12th, 1871, accepted such grant for highway purposes. Public Highways, chap. 33; 16 Stat. at L. 378.

At the time of the grant for highway purposes, the Northern Pacific Railway Company had not filed its map of definite location of its line or roadbed, and no right to any specific sections of land had attached, except an inchoate right. It was therefore competent for Congress to dispose of the public lands along the general route of the railroad. Northern P. R. Co. v. Sanders, 166 U. S. 620, 41 L. ed. 1139, 17 Sup. Ct. Rep. 671; Menotti v. Dillon, 167 U. S. 703, 42 L. ed. 333, 17 Sup. Ct. Rep. 945.

A different rule would obtain in the event that, prior to the date of such grant, the lands along said section lines had been appropriated and had passed from the public domain. Walcott Twp. v. Skauge, 6 N. D. 382, 71 N. W. 544; Keen v. Fairview Twp. 8 S. D. 558, 67 N. W. 623; Wells v. Pennington County, 2 S. D. 1, 39 Am. St. Rep. 758, 48 N. W. 305; Tholl v. Koles, 65 Kan. 802, 70 Pac. 881; Wallowa County v. Wade, 43 Or. 253, 72 Pac. 793; Streeter v. Stalnaker, 61 Neb. 205, 85 N. W. 47.

BURKE, J. In April, 1913, plaintiff was the owner of the west one half, section 23, 139–79, Burleigh county, North Dakota, having purchased the same from the Northern Pacific Railway Company; in that month the defendant township improved the highway between said land and the section immediately to the west thereof, thereby taking 4 acres from plaintiff's land, whereupon this action was brought for damages. A proper consideration of the case requires a review of facts beginning July 2, 1864, upon which date an act of Congress was approved granting the alternate sections of a strip of land from Lake Superior to Puget sound in aid of the construction of the Northern Pacific Railroad.

Act July 2, 1864, chap. 217, 13 Stat. at L. 365. From such grant we quote: "And be it further enacted, that there be, and hereby is, granted to the 'Northern Pacific Railroad Company,' its successors and assigns, for the purpose of aiding in the construction of said railroad and telegraph line . . . every alternate section of public land, not mineral, designated by odd numbers to the amount of twenty alternate sections per mile, on each side of said railroad line, as said company may adopt, through the territories of the United States, . . . and whenever on the line thereof, the United States [shall] have full title, not reserved, sold, granted or otherwise appropriated, and free from preemption, or other claims or rights at the time the line of said road is definitely fixed, and a plat thereof filed in the office of the commissioner of the general land office, . . . whenever prior to said time, any of said sections or parts of sections shall have been granted, sold, . . . or otherwise disposed of, other lands shall be selected by said company in lieu thereof, etc." It is agreed that the said Northern Pacific Railroad Company constructed its line adjacent to the plaintiff's land and filed its plat of definite location on or about the 26th day of May, 1873. In the meantime, and on or about the 26th of July, 1866, an act of Congress was approved, being now known as § 2477, U. S. Rev. Stat. Comp. Stat. 1913, § 4919, wherein, among other things, it was enacted that "the right of way for the construction of highways over public lands not reserved for public uses is hereby granted," etc. This act, by which all of the public domain was burdened with an easement in favor of the public for use as a highway, was approved slightly over two years after the grant of the Northern Pacific Railway Company, but almost seven years before said railroad company had filed its certificate of definite location. On January 12, 1871, there was enacted by the legislative assembly of the territory of Dakota, chapter 33 of the Session Laws of that year, which provided, among other things, that "hereafter all section lines in this territory shall be and hereby are declared public highways as far as practicable. . . ." This territorial act was approved more than two years before the said railroad company had filed its certificate of definite location.

At the time the act of July 2, 1864, was approved, the land in controversy was Indian country, i. e., the claims of the Indian tribes had not at that time been extinguished, but the fee was in the United States,

31 N. D.—4.

the Indians having merely a right of occupancy subject to the dominion and control of the government and its right to convey the land in fee. In June 19, 1874, all rights of the Indians were extinguished by treaty.

It is appellant's contention that the grant from the United States to the Northern Pacific Railroad Company of July 2, 1864, was *in præsenti,* and that upon the filing of the plat of definite location title to all of said lands passed to the railroad company as of July 2, 1864, and therefore Congress was without power to burden said lands with highway easements on July 26, 1866, and plaintiff, as successor in interest of the said railroad company, is entitled to remuneration for the tract taken for such highway. Defendant, on the other hand, contends that while the grant of 1862 was *in præsenti,* yet it attached to no particular tracts of land until May 26, 1873, when the plat of definite location was filed, and that in the interim from July 2, 1864, to May 26, 1873, Congress had power to sell or otherwise encumber any parcel or tract within the said strip, and that the company's remedy was to select other lands in lieu thereof as provided in said act.

Plaintiff's land was one of the alternate sections selected by the railroad under act of 1864. For some reason not apparent to this court, the defense of prescription was waived by defendant, and we are asked to pass upon the controversy above outlined. Appellant in his brief cites *Buttz v. Northern P. R. Co.* 119 U. S. 55, 30 L. ed. 330, 7 Sup. Ct. Rep. 100; *St. Paul & P. R. Co. v. Northern P. R. Co.* 139 U. S. 1, 35 L. ed. 77, 11 Sup. Ct. Rep. 389; *Bardon v. Northern P. R. Co.* 145 U. S. 535, 36 L. ed. 806, 12 Sup. Ct. Rep. 856; *Northern Lumber Co. v. O'Brien,* 204 U. S. 190, 51 L. ed. 438, 27 Sup. Ct. Rep. 249; *Walbridge v. Russell County,* 74 Kan. 341, 86 Pac. 473; *St. Louis & S. F. R. Co. v. Love,* 29 Okla. 523, 118 Pac. 259, all of which we have examined with care, and which in our opinion are not in point; for instance, *Walbridge v. Russell County* is unlike the case at bar in that the grant to the Union Pacific Railway Company was made in 1862, and the certificate of definite location was filed July 11, 1866, or fifteen days before the approval of the act of Congress creating the highway easement. This difference justifies the language of the Kansas court, that "at the time of the grant for public road purposes in 1866, the lands in question belonged to the Union Pacific Railway Company." In *Buttz v. Northern P. R. Co.* 119 U. S. 55, 30 L. ed. 330, 7 Sup. Ct. Rep.

100, it was held that the pre-emptioner acquired no rights as such, because the Indian title had not been extinguished until after the Northern Pacific certificate of definite location had been filed. The other cases cited by appellant are as easily distinguished.

On the other hand, the plain reading of the act of 1864 is that the lands granted should be those *"not reserved, sold, granted or otherwise appropriated . . . at the time the line of said road is definitely fixed, and a plat thereof filed in the office of the commissioner of the general land office."* Nothing can be plainer than that said railroad was to take such lands as the government had left in said strip on May 26, 1873.

Besides the plain reading above, we have the expression of the Supreme Court of the United States at least four times upon the same proposition. In Menotti v. Dillon, 167 U. S. 703, 42 L. ed. 333, 17 Sup. Ct. Rep. 945, it is said: "The Acts of 1862 and 1864 by necessary implication recognize the right of Congress to dispose of the odd-numbered sections, or any of them, within certain limits on each side of the road at any time prior to the definite location of the line of the railroad." And again in the same opinion, it is said: "A grant of public lands in aid of the construction of a railroad is, until its route is established, in the nature of 'a float,' and title does not attach to specific sections until they are identified by an accepted map of definite location. . . . The railroad company accepted the grant subject to the possibility that Congress might, . . . prior to the definite location of its line, sell, reserve, or dispose of enumerated sections for other purposes than those originally contemplated." In Northern P. R. Co. v. Sanders, 166 U. S. 620, 41 L. ed. 1139, 17 Sup. Ct. Rep. 671, it is said: "The company acquired, by fixing its general route, only an inchoate right to the odd-numbered sections granted by Congress, and no right attached to any specific section until the road was definitely located. . . . Until such definite location it was competent for Congress to dispose of the public lands on the general route of the road." The act of 1866 did not take from the railroad company any lands to which it had then acquired an absolute right. The right it acquired was to earn such of the lands within the exterior lines of that route as were not sold, reserved, or disposed of at the time of the definite location of its road. The act did not violate any contract between the United States and the

railroad company, for the reason that the contract itself recognized the right of Congress at any time before the line was definitely located. See also Wisconsin C. R. Co. v. Price County, 133 U. S. 496, 33 L. ed. 687, 10 Sup. Ct. Rep. 341. Also Barden v. Northern P. R. Co. 154 U. S. 288, 38 L. ed. 992, 14 Sup. Ct. Rep. 1030, from which we quote: "As the sections granted were to be within a certain distance on each side of the line of the contemplated railroad, they could not be located until the line of the road was fixed. The grant was therefore in the nature of 'a float,' but when the route of the road was definitely fixed, the sections granted became susceptible of identification, and the title then attached as of the date of the grant, *except as to such parcels as had been in the meantime,* under its provisions, *appropriated to other purposes."*

While this point is not decided by any previous decision of our own court, it is interesting to note the case of Walcott Twp. v. Skauge, 6 N. D. 382, 71 N. W. 544, wherein it is said at page 388: "Highways once established over the public domain under and by virtue of this act, the public at once became vested with an absolute right to the use thereof, which could not be revoked by the general government, and whoever thereafter took the title from the general government took it burdened with the highway so established." While appellant has specified four errors for review, they are all similar and all answered by the foregoing arguments. The judgment of the trial court is in all things affirmed.

### On Rehearing.

A petition for rehearing was granted by this court, partly because appellant had been deprived of a hearing originally on account of the small sum involved. Upon such rehearing appellant merely urges that, notwithstanding the grant of the right of way aforesaid by the act of July 26, 1866, and its acceptance by chapter 33, Sess. Laws 1871 of the Territory of Dakota, that later enactments of the legislature, to wit, § 1348, Rev. Codes 1905, Comp. Laws 1913, § 1920, declared a policy of this state to compensate the owners of section lines when the same were laid out and opened as public highways. We very much doubt the power of the legislature to waive a right of way granted by Congress in 1866, and accepted in 1871, especially as the state did not own said right of way, but merely held as trustee for the public; but such a discussion

is unnecessary as we are agreed the legislature did not, by said § 1348, Rev. Codes 1905, Comp. Laws 1913, § 1920, intend to waive any of the rights which the public had acquired by the acceptance under chapter 33, Sess. Laws 1871. See § 1357, Rev. Codes 1905, Comp. Laws 1913, § 1930. Judgment of the trial court is in all things affirmed.