HANS H. KOLOEN v. PILOT MOUND TOWNSHIP, a Public Corporation, S. J. Tande, Charles Johnson, Gunder Trusta, as Supervisors of said Pilot Mound Township, a Public Corporation, and as Road Overseers therein.

(L.R.A.——, —, 157 N. W. 672.)

**Public highways — across public lands — congressional grant of — acceptance — user by the public — highway established — public authorities — positive act by — intent to accept — manifest.**

In order to constitute an acceptance of the congressional grant of right of way for public highways across public lands, there must be either user by the public for such a period of time and under such conditions as to establish a highway under the laws of this state, or there must be some positive act or acts on the part of the proper public authorities clearly manifesting an intent to accept such grant with respect to the particular highway in question.

Opinion filed March 29, 1916.

---

Note.—The annotation to Vogler v. Anderson, referred to in this opinion, in 9 L.R.A.(N.S.) 1223, on the effect of the mere use of a highway over the public domain as acceptance of the grant of the right of way, gives several other cases in accord with the case above; the case itself holding, as here, that the establishment of the public highway in some manner provided by statute is necessary to constitute an acceptance of the congressional grant of a right of way across public land and perfect the grant; and therefore a mere user short of the time necessary to establish title by adverse possession is not sufficient.

33 N. D.—34.

From a judgment of the District Court of Griggs County, *Coffey, J.,* plaintiff appeals.

Reversed.

*L. Combs* and *L. S. B. Ritchie,* for appellant.

This was not sufficient and continuous user by the public to denote an intention to accept, or to make the road a public highway, in any sense. Walcott Twp. v. Skauge, 6 N. D. 382, 71 N. W. 544.

There is no evidence here to show that the land involved belonged to the government at the time of the passage of the act. § 2477, U. S. Rev. Stat. Comp. Stat. 1913, § 4919. The burden is upon defendants to show that title was in the government then, and that acceptance of the grant was by competent authority. Wells v. Pennington County, 2 S. D. 1, 39 Am. St. Rep. 758, 48 N. W. 305; Schwerdtle v. Placer County, 108 Cal. 589, 41 Pac. 448; Rolling v. Emrich, 122 Wis. 134, 99 N. W. 464; Walbridge v. Russell County, 74 Kan. 341, 86 Pac. 473.

There must have been a survey, staking out, or actual use by the public of one distinct line of road without abandonment, to entitle defendants to claim a highway, and the burden is upon defendants to show that the public so used one distinct line or specific way as a highway. Red River & L. of W. R. Co. v. Sture, 32 Minn. 95, 20 N. W. 229; Wayne v. Caldwell, 1 S. D. 483, 36 Am. St. Rep. 750, 47 N. W. 547; Smith v. Nofsinger, 86 Neb. 834, 126 N. W. 659.

The evidence here shows absolute abandonment of this tract or line as a highway by the public. Randall v. Rovelstad, 105 Wis. 410, 81 N. W. 819; Meek v. Meade County, 12 S. D. 162, 80 N. W. 182.

The proceedings in laying out and dedicating a public highway must be a matter of public record, so that all may know of the same, and that the public rights may be clearly defined. Wayne v. Caldwell, 1 S. D. 483, 36 Am. St. Rep. 750, 47 N. W. 547; Woodworth v. Spirit Mound Twp. 10 S. D. 504, 74 N. W. 443.

The public cannot, by miscellaneous use of different trails over an individual's land for a period of time, in that manner lay out and dedicate a highway, especially where such land is wild or unimproved, as was done in this case. Smith v. Nofsinger, supra; Kendall-Smith Co. v. Lancaster County, 84 Neb. 654, 121 N. W. 960; Burleigh County v. Rhud, 23 N. D. 362, 136 N. W. 1082.

In the laying out of highways the proceedings of the commissioners must strictly conform to the instructions and provisions of the statute. A failure to comply therewith will oust them of jurisdiction, and their

proceedings will be null and void. Highway Comrs. v. Harper, 38 Ill. 103; Highway Comrs. v. People, 4 Ill. App. 391; Hyslop v. Finch, 99 Ill. 171; Wabaunsee County v. Muhlenbacker, 18 Kan. 129; People ex rel. Chubb v. Scio Twp. 3 Mich. 121; Kenn v. Fairview Twp. 8 S. D. 617, 67 N. W. 1151.

*Benjamin Tufte,* for respondents.

"The right of way for construction of highways over public lands not reserved for public use is hereby granted." U. S. Rev. Stat. § 2477, Comp. Stat. 1913, § 4919; Wells v. Pennington County, 2 S. D. 1, 39 Am. St. Rep. 758, 48 N. W. 305.

Withholding lands for school purposes is not a grant or reservation for a public use, within the meaning of the congressional grant. Riverside Twp. v. Newton, 11 S. D. 120, 75 N. W. 899.

Where the land is made use of by the public and thus capable of identification, it is sufficient. Elliott, Roads & Streets, p. 164.

"Where the local government or state makes a plat and thus opens the way to the public, there need be no evidence of acceptance, for that is necessarily involved in the act of dedicating the way." Reilly v. Racine, 51 Wis. 528, 8 N. W. 417.

Unmistakable evidence of appropriation is evidence of acceptance. Comford v. Great Northern R. Co. 18 N. D. 570, 120 N. W. 875.

That this highway was once established there can be no question.

"Highways once established over public domain, the public at once become vested with an absolute right to the use thereof which could not be revoked by the government or by others thereafter taking title from the goverment, because they took it burdened with the highway so established." Walcott Twp. v. Skauge, 6 N. D. 382, 71 N. W. 544; Rolling v. Emerich, 122 Wis. 134, 99 N. W. 464.

"Where a dedication is shown, all that is necessary to constitute an acceptance of the dedication is that the highway be identified, located, appropriated." Comford v. Great Northern R. Co. supra; Jamestown & N. R. Co. v. Jones, 7 N. D. 619, 76 N. W. 227.

Acceptance in such cases by some officer or body is not necessary. Carpenter v. Schnerle, 91 Neb. 806, 137 N. W. 850; Elliott, Roads & Streets, pp. 175, 176; 2 Dill. Mun. Corp. § 638; Watertown v. Troeh, 25 S. D. 21, 125 N. W. 501; Eastland v. Fogo, 66 Wis. 133, 27 N. W. 159, 28 N. W. 143; 9 Am. & Eng. Enc. Law, p. 52; Ashland v. Chicago & N. W. R. Co. 105 Wis. 398, 80 N. W. 1101.

Deviation from such highway, caused by obstructions placed thereon or across it, does not constitute abandonment, and fencing a public highway for ten years does not prevent the public from claiming it as a highway. Ford v. Doolittle, 157 Iowa, 210, 138 N. W. 397; Lowe v. East Sioux Falls Quarry Co. 25 S. D. 393, 126 N. W. 609.

It is only where another highway is accepted.in place of a pre-existing one, under such circumstances as to give a valid title to the new way, and to work an abandonment of the old highway, is the title of the public to such old highway lost. Ashland v. Chicago & N. W. R. Co. 105 Wis. 398, 80 N. W. 1101.

CHRISTIANSON, J. The only ultimate question presented for our determination in this case is whether there exists a highway across a quarter section of land in Griggs county, possessed by plaintiff under a contract of purchase from the board of university and school lands of the state of North Dakota. The plaintiff asserts that no such highway exists, and brought this action to enjoin the township officials from grading and otherwise exercising dominion over the strip of land which defendants claim is dedicated to such highway use. The trial court decided in favor of defendants and dismissed plaintiff's action, and also adjudged that a legal public highway existed across said land. Plaintiff has appealed from this judgment and demanded a trial *de novo* in this court.

Unfortunately litigation of this character is ordinarily accompanied by bitter personal feelings on the part of the litigants and the different members of the community interested in the outcome of the litigation, and usually the evidence presents a hopeless conflict. In this case, however, there is little or no conflict in the evidence regarding the material facts, and the testimony of all the witnesses impresses us with its apparent truthfulness. In the instances wherein differences occur in the testimony of the various witnesses, such variation seems to be due to the difference in observation and recollection of the witnesses, rather than to any desire or intention to testify falsely.

The land involved herein, to wit, the S.W. $\frac{1}{4}$, sec. 36, T. 148, R. 59, was formerly school land, which was granted to the state of North Dakota by Congress in the enabling act (enacted in 1889) for the support of the common schools in the state. The plaintiff purchased this quar-

ter section of land from the state at a public sale held on December 13, 1909, and since that time he has possessed, and exercised dominion over, said tract.

The evidence shows that in 1883 the public began to use and travel a trail over the land in question. This trail led to Cooperstown, and entered the tract in controversy on the north boundary line thereof at a point some rods west of the east quarter line, running thence in a southeasterly direction, intersecting the east quarter line of such tract a short distance north of the southeast corner thereof. This trail was designated upon the trial as trail No. 1. This trail was traveled for about six years, when a man named Cameron became possessed of the quarter lying immediately south of the tract in controversy. Cameron broke up that portion of his land crossed by trail No. 1, and this trail was used no more. Thereupon, as is usual in such cases, the public began to use another trail. This trail was designated upon the trial as trail No. 2. This trail entered the tract in controversy at the north boundary line at or about the same place as trail No. 1, or some distance west thereof. Trail No. 2, however, ran in a southwesterly direction and emerged from, and intersected the south boundary line of, the tract in controversy at a distance about 80 rods west of the point where trail No. 1 intersected the same line. Trail No. 2 was traveled by the public for about two years when Cameron constructed a house on his land lying south of the tract in controversy whereupon he stopped travel upon his land over trail No. 1, and the public thereupon ceased to travel upon this trail and began to use a third trail known upon the trial as trail No. 3. Trail No. 3 branched off from trail No. 2 at some distance south of the north boundary line of the tract in controversy. (The evidence does not disclose the exact distance, but it is apparently about 25 or 30 rods south of the north boundary line.) Trail No. 3, however, emerged from the tract in controversy at the southwest corner thereof or about 80 rods west of the point where trail No. 2 emerged from such tract. Trail No. 3 was traveled for a period of about two years when obstructions were placed in its way by Cameron along the north line of his land, and the public again began to use trail No. 2, which was used for about six years or until the spring or summer of 1900.

One Elof Olson became the owner of the Cameron quarter in June, 1897, and in 1900 he broke up, and subsequently fenced, that part of

the quarter which was crossed by trail No. 2. Thereupon travel over trail No. 2 across the Cameron land as well as across the land in controversy was wholly or practically abandoned, and the public again used trail No. 3, and continued to use the same for about ten years thereafter, or up to some time in July, 1910, when plaintiff broke that part of the quarter in controversy crossed by trail No. 3. Train No. 3 was thereupon abandoned, and the public again began to travel over trail No. 2, which continued to be traveled until this action was brought in July, 1913.

Upon the trial the plaintiff offered in evidence the following plat showing the approximate location of the three trails:

*Sec. 36 T. 148 N. R. 59 W.*

The witnesses are practically all agreed that the general location, direction, and points of egress of the trails are correctly shown on the plat, but they differ as to whether the plat correctly shows the point where trail No. 2 enters the tract at the northern boundary line. With respect to this, plaintiff's witnesses claim that the plat is correct, while defendant's witnesses claim that trail No. 2 entered upon the premises at the same (or practically the same) point as that where trail No. 1 entered the same.

The laws of the territory of Dakota applicable to the opening and laying out of highways in force in 1884 provided as follows: "Whenever twelve freeholders of the county, six of whom shall reside in the immediate neighborhood, shall petition the board of county commissioners for the location, vacation, or change of any public highway, other than on section or quarter section lines, such board, if they shall be satisfied that notice of such application has been given by publication three weeks successively in a newspaper published in the county, or by posting up notices in three of the most public places in the neighborhood of such highway, or change, at least twenty days before the meeting of the board at which such petition is to be presented, shall appoint three persons to view such highway." Pol. Code, Rev. Codes 1877, § 18, chap. 29.

"The board of county commissioners has power to establish, change, and vacate highways upon section and quarter section lines, when the initial and terminal points, and the course of the highway, can be clearly described without the appointment of viewers or the services of a surveyor; but in all other respects the proceedings therein shall be governed by the provisions of the preceding subdivision of this chapter, relating to the establishment, vacation, and change of highways not on such lines." Pol. Code, Rev. Codes 1877, § 30, chap. 29.

"All public highways which have been or may hereafter be used as such, for twenty years or more, shall be deemed public highways." Pol. Code, Rev. Codes 1877, § 37, chap. 29.

"All public roads and highways within this territory which have been open and used as such, and included in a road district in the town in which the same are respectively situated during twenty years next preceding the time when this act shall take effect, are hereby declared public roads or highways and confirmed and established as such, whether the same have been lawfully laid out, established, and opened or

not." Laws 1883, § 1, chap. 2, chap. 112. See also Walcott Twp. v. Skauge, 6 N. D. 382, 389, 71 N. W. 544.

It is conceded that the land in controversy was not within the limits of any organized township, and that the proceedings to establish a highway over the same would necessarily have to be brought before the county commissioners.

Under the laws of the territory of Dakota in force in 1884, public highways might become established in such territory in any one of the following ways:

1. Section lines, whether traveled or not, were already highways by virtue of legislative declaration, and might be traveled and subjected to such use as far as practicable. Pol. Code 1877, § 1, chap. 29.

2. Roads, other than on section or quarter lines, could be established by the board of county commissioners, upon a petition signed by twelve freeholders of the county, six of whom resided in the immediate neighborhood of the proposed road.

3. Roads might be created by user for a period of twenty years.

It is undisputed that the proceedings prescribed by § 18, chap. 29, Pol. Code 1877, were not had. It is undisputed that no petition was ever filed with, or presented to, the county commissioners, asking for the location of the highway in controversy, and that no notice of the presentation of a petition or application was ever published or posted. The undisputed evidence shows that the county and township road officers never exercised or attempted to exercise any control over any part of the road so surveyd by Ulland and acted upon by the county commissioners of Griggs county, but that the whole of the proposed highway was, with the single exception of the trail leading over the land in controversy, abandoned. That about 1891 Cameron obstructed and stopped travel upon such alleged highway across the premises lying immediately south of the land in controversy, and thereby stopped travel thereover for a period of about two years. And that in 1900, Olson, the then owner, broke and subsequently fenced the land lying immediately south of the tract in controversy, and thereby stopped travel over such proposed highway across the so-called Cameron land, and that the proposed highway as surveyed across such land has never since been traveled. And upon the trial of this action the township officers disclaimed any intent of claiming a highway across the Cameron land.

The undisputed testimony further shows that no work or repair of any kind was ever performed upon such alleged road at any time or at any place on the land in controversy.

It is conceded by respondent that the decision of this court in Burleigh County v. Rhud, 23 N. D. 362, 136 N. W. 1082, is decisive of the fact that the public user of the trails over the land in controversy did not create a highway by prescription. But respondent's counsel claims, and the trial court found, that Congress granted a highway over said premises, and that the county commissioners of Griggs county accepted such grant and thereby created such highway. Respondents rest this claim upon certain evidence showing that one Ulland, the county surveyor of Griggs county, in the spring of 1884 at the request of the county clerk or one of the county commissioners of Griggs county, made a proposed survey of a proposed road commencing at or near the northeast corner of section 1, T. 148, R. 59, running thence a distance of some 15 to 20 miles and terminating at or near Cooperstown; that the proposed road shown in this survey ran across the quarter section in controversy in approximately the same place occupied by trail No. 2; and that the records of the county clerk of Griggs county show that on April 11, 1884, the county commissioners of that county appointed three viewers to view such proposed highway; that on May 19, 1884, the report of the viewers was accepted and three reviewers of such proposed road selected by the county commissioners, and that the report of such reviewers was "received and on motion, opened."

The grant upon which respondents rely is the following law enacted by Congress in 1866: "The right of way for construction of highways over public lands not reserved for public use is hereby granted." U. S. Rev. Stat. § 2477, Comp. Stat. 1913, § 4919. The Federal grant was accepted by the legislative assembly of the territory of Dakota in 1871, by an enactment which provided "that all section lines in this territory shall be and are hereby declared public highways as far as practicable." Laws 1871, chap. 33. That provision has remained in force in the territory and state since its enactment. See Wenberg v. Gibbs Twp. 31 N. D. 46, 153 N. W. 440.

The establishment of a system of highways is not altogether a matter of local concern or interest, but is a matter which concerns and affects

in a measure the state as a whole. The legislature in its acceptance of the congressional grant recognized this fact, and as a matter of governmental policy established a system of highways to be constructed as far as practicable along the various section lines. In construing the statutory provisions enacted by the territorial legislature, in the case of Lawrence v. Ewert, 21 S. D. 580, 114 N. W. 709, the supreme court of our sister state said: "It will be observed that by the act of 1871 the lawmaking power has clearly expressed its intention in language susceptible of but one construction. The expression, 'all section lines shall be and are hereby declared public highways as far as practicable,' was evidently intended to make every section line in the then territory and now state a highway over which the people of the state would have an easement and right of way subject to the qualifications therein contained for the purpose of passing from one section of the state to another. Declaring section lines 'public highways' means that they are roads which every citizen has a right to use. . . . The legislature evidently intended that the term 'highway' as used in the law of 1871 should have the ordinary meaning, and that section lines throughout the territory as far as practicable, and not interfering with the then existing highways in the settled portions of the territory, should be open to the use of the public, and no action of boards of county commissioners or supervisors of townships is required to establish or open such highways as are practicable on section lines. The highways so established by the legislative authorities cannot lawfully be instructed by private citizens until changed or vacated in the manner provided by law. . . ."

"Appellants attach much importance to the clause, 'as far as practicable;' but it is quite evident that the only purpose of that qualification was to relieve the counties from the expenditure of money in the opening of highways not practicable without such expenditure, and do not limit or qualify the general language of the section, providing that 'all section lines shall be and are hereby declared public highways,' as applicable to section lines which could be used as such highways without any additional expenditure of money or labor thereon."

In discussing the effect of the congressional grant and what is essential to constitute a sufficient acceptance thereof, the supreme court of Washington in Vogler v. Anderson, 46 Wash. 202, 9 L.R.A.(N.S.)

1223, 123 Am. St. Rep. 932, 89 Pac. 557, said: "The grant is for a right of way to establish a public highway, and a public highway must be established in some of the ways provided by statute before the grant takes effect. If the road is established under the statute providing for their establishment by the board of county commissioners, it takes effect when the commissioners lawfully establish the road; but, if the road is established by adverse user, it takes effect when the adverse user ripens into a right by prescription."

We are not called upon in this case, however, to determine whether the language used by the Washington court should be literally adopted as the rule in this state. But in so far as it holds that "if the road is established by adverse user, it takes effect when the adverse user ripens into a right by prescription," it is in harmony with the law announced by this court in Burleigh County v. Rhud, 23 N. D. 362, 136 N. W. 1082. As already stated, it is conceded that, in the case at bar, the adverse user had not ripened into, or resulted in the establishment of, a highway by prescription. The authorities seem agreed that there can be no acceptance of the congressional grant by public user alone, unless such user continues for a length of time sufficient to ripen into a right by prescription as defined by the laws of the state or territory where such highway is located. The authorities, also, seem agreed that in all other cases acceptance of the Federal grant must be by some positive act on the part of the public authorities authorized to establish and maintain highways, showing a clear intent on the part of such authorities as agents for the public to accept the grant. See Vogler v. Anderson, supra; Smith v. Nofsinger, 86 Neb. 834, 126 N. W. 659; Wallowa County v. Wade, 43 Or. 253, 72 Pac. 793, and authorities cited in these cases. See also Keen v. Fairview Twp. 8 S. D. 558, 67 N. W. 623; Wayne v. Caldwell, 1 S. D. 483, 36 Am. St. Rep. 750, 47 N. W. 547; Meek v. Meade County, 12 S. D. 162, 80 N. W. 182; Shanline v. Wiltsie, 70 Kan. 177, 78 Pac. 436, 3 Ann. Cas. 140; Smith v. Smythe, 197 N. Y. 457, 35 L.R.A.(N.S.) 524, 90 N. E. 1121; Randall v. Rovelstad, 105 Wis. 410, 81 N. W. 819.

In this case we are convinced that no such acceptance has been shown. The mere fact that the county surveyor made a proposed survey of a proposed highway, and that subsequently the county commissioners appointed viewers and reviewers of such highway, and accepted their

reports, when taken in connection with the undisputed facts that shortly thereafter the authorities permitted Cameron and other owners of land crossed by the alleged highway to obstruct the same; that such obstructions resulted in a repeated change to widely divergent routes of travel over the land in controversy; that the public officers never exercised or sought to exercise dominion or control over the alleged highway, even across the land in controversy, and never caused any labor to be performed either in the construction or repair thereof, although labor was performed on the highway on the township line adjacent thereto; that the entire proposed highway as surveyed by Ulland, some 15 miles and over in length (with the single exception of the routes traveled over the land in controversy), has long since been wholly abandoned, in our opinion, fails to show any acceptance of a right of way for, or the establishment of, a highway over the land in controversy. If the public authorities believed that they had established the proposed highway surveyed by Ulland, it is difficult to understand how Cameron and others could be permitted with impunity to intentionally obstruct the same and prevent all travel thereover.

We have reached the conclusion that a highway was not established over the land in controversy. The judgment is therefore reversed and the cause remanded with directions that judgment be entered in conformity with the views expressed in this opinion.