Walt SMALL, Appellant,

v.

BURLEIGH COUNTY, a political subdivision of the State of North Dakota, and the Board of County Commissioners for Burleigh County, North Dakota, Appellees,

and

A. G. Golden and Chris Yegen, Intervenors-Appellees.

Civ. No. 9029.

Supreme Court of North Dakota.

Dec. 31, 1974.

Rehearing Denied Jan. 30, 1975.

Sperry & Schultz, Bismarck, for appellant.

Thomas F. Kelsch, State's Atty., and Dennis A. Schneider, Asst. State's Atty., Bismarck, for appellees.

Fleck, Mather, Strutz & Mayer, Bismarck, for intervenors-appellees.

VOGEL, Judge.

This case presents us with the necessity of examining some historic concepts related to land ownership in North Dakota, more specifically, public rights-of-way upon the 33 feet on each side of section lines. Walt Small, a Burleigh County farmer, petitioned the board of county commissioners to declare certain section lines to be public roads and to require the removal of fences along such section lines. In support of his petition Mr. Small submitted an affidavit stating that he had need of access across these section lines to approximately 2,500 acres of land he farmed. Subsequently, four other farmers joined in his petition. At a meeting on November 6, 1973, the Burleigh County commissioners denied the petition. Small then appealed to the Burleigh County District Court where A. G. Golden and Chris Yegen, the property owners adjacent to the section lines, were allowed to intervene.

The district court affirmed the action of the county commissioners, holding that the section lines in question were not open section lines, that unopened section lines may have fences erected on them, and that the board of county commissioners did not abuse its discretion in refusing to open these section lines for public travel.

On appeal to this court Small has expressed surprise with the action of the district court. The State's Attorney, in reliance upon opinions of the Attorney General, had taken the position that section lines were opened by legislative action but that the county did not have to order removal of fences unless it wanted to construct a road. On this appeal the State's Attorney has recanted and agrees with the trial court that section lines are not open unless action is taken by the township or county board having jurisdiction.

While there have been approximately twenty decisions of this Court relating to section line controversies, including several where the question could have been determined, there is no clear-cut decision by this Court on the question necessarily involved here—whether a section line is open for travel without action by a township or county board, or whether such action is required in order to open a section for travel.

Our case law settles some issues. It is established that the United States in 1866, by the passage of Section 2477, Revised Statutes, made an offer of section line easements on public land, and that the offer was accepted by the Territory of Dakota when it adopted Chapter 33, Laws of Dakota Territory, 1870–1871, codified as Chapter 29, Section 37 of the Political Code of 1877. Walcott Township v. Skauge, 6 N.D. 382, 71 N.W. 544 (1897); Northern Pacific Railway Company v. Lake, 10 N.D. 541, 88 N.W. 461 (1901); Koloen v. Pilot Mound Township, 33 N.D. 529, 157 N.W. 672 (1916); Faxon v.

Civil Township of Lallie, 36 N.D. 634, 163 N.W. 531 (1917); Huffman v. West Bay Township, 47 N.D. 217, 182 N.W. 459 (1921); and Hillsboro National Bank v. Ackerman, 48 N.D. 1179, 189 N.W. 657 (1922).

The 1871 legislation read:

"That hereafter all section lines in this Territory shall be and are hereby declared public highways as far as practicable; *Provided,* That [they shall not interfere with existing highways and shall not apply to a certain portion of Pembina County]."

■ The rights granted and accepted by the cited statutory provisions have never been surrendered. Huffman v. West Bay Township, *supra*; Hillsboro National Bank v. Ackerman, *supra*.

■ In North Dakota the rights of the public to section line highways and to streets are easements only, limited to the right to travel and other rights incident thereto, and the owner of the adjoining land owns the fee title to the property included in the 33 foot easement up to the secton line. Northern Pacific Railway Company v. Lake, *supra*; Donovan v. Allert, 11 N.D. 289, 91 N.W. 441 (1902).

■ No action by the county or township board is necessary to "establish" or "locate" a highway upon a section line, and any action purporting to locate or establish a highway upon a section line is superfluous. Huffman v. West Bay Township, *supra.*

It will be seen that action is required by a township or county board only if the "opening" of a highway upon a section line is different from and additional to "locating" and "establishing" a highway, and if such highways were not "opened" by the offer by the United States Government and the acceptance by the Territory of Dakota of section line easements.

In Huffman v. West Bay Township, *supra,* this question was raised but not decided, the majority opinion saying, "Whatever difference of opinion may exist as to wheth-er any proceedings are necessary to open a highway on a section line—and upon this we express no opinion—there can be no question but that no proceedings are necessary to establish a highway on a section line."

In deciding this question, as we now necessarily must, we are aided but little by our prior decisions. While some of them contain language which can be used to argue one way or the other, much of the language used is dictum, since most of the cases relate to highways which are not upon section lines and which therefore must be laid out, established and opened under statutory provisions which do not apply to section line highways. Such cases include, for example, Walcott Township v. Skauge, *supra*; Koloen v. Pilot Mound Township, *supra*; and Kritzberger v. Traill County, 62 N.D. 208, 242 N.W. 913 (1932).

■ Nor are we aided much by the various and often conflicting statutes passed by the State Legislature. Many of them also relate to highways to be built upon private lands, not on section lines. Statutes passed in 1897 and 1899 as Section 3, Chapter 112, Session Laws 1897, and Section 3, Chapter 97, Session Laws 1899, contained language to the effect that section lines should be considered public roads "to be opened to the width of two rods on each side of such section lines . . ." and from this it might be argued that action was required by the applicable board in order to open such section lines. However, in Faxon v. Township of Lallie, *supra,* the following comment was made: "Both the act of 1897 and the act of 1899 are general highway acts and contain many other provisions than the one in question. The chapters, as we understand it, were intended to be as comprehensive as possible, and to cover, as far as possible, the whole subject. We cannot derive therefrom any intention that the rights and the property in the section lines, as highways, should be surrendered. The intention, we believe, was merely that where land other than the section lines

was sought to be appropriated on account of necessary deviations from such section lines, or where the construction of the road would injure adjacent buildings or property by the removal of the lateral support, or otherwise, damages might be assessed. We can, however, find no intimation that the right to the easement should be surrendered, or that there should be a grant by the state to the landowner of that easement." In the same decision it was held that the acceptance of the highway grant by the Territorial Act of 1871 was not affected by the 1897 and 1899 legislation.

The effect of subsequent legislation was also considered in Wenberg v. Gibbs Township, 31 N.D. 46, 153 N.W. 440 (1915), where it was held, quoting Walcott Township v. Skauge, *supra*, that "Highways once established over the public domain . . . the public at once became vested with an absolute right to the use thereof, which could not be revoked by the general government, and whoever thereafter took the title from the general government took it burdened with the highway so established." On rehearing in *Wenberg, supra*, this Court expressed "very much doubt" of the power of the Legislature to waive a right-of-way granted by Congress in 1866, and accepted in 1871, especially as the State did not own the right-of-way, but merely held as trustee for the public, and specifically held that the Legislature did not, by the passage of 1897 and 1899 legislation containing the words "to be opened" which are now a part of Section 24–07–03, N.D.C.C., "intend to waive any of the rights which the public had acquired by the acceptance under chapter 33, S.L. 1871."

We thus conclude that no legislative intention as to the question before us can be derived from the passage of the 1897 and 1899 legislation.

A statute which appears to permit fencing on section line rights-of-way is Section 24–06–28, N.D.C.C. This section, along with Sections 24–06–29 and 24–06–30, N.D.C.C., was derived from Chapter 142, 1919 Session Laws. As passed in 1919 the three

sections were consistent in forbidding obstructions, stones or rubbish within 27 feet (later amended to 33 feet) of a section line without permission of the board of county commissioners or township board, which was not to be granted unless construction of a road was impracticable and in providing for a procedure for removing obstructions. It was only in 1955, by the passage of Chapter 181, 1955 Session Laws, that the following was added: "The provisions of this section shall not prohibit construction of fences along or across section lines not open for travel but such fences shall be subject to removal as provided in section 24–06–30."

We agree with the Attorney General, who has held in opinions described below that this belated tolerance of fencing on section lines is not effective to deprive the public of rights dating back to 1871 and 1866.

In arriving at our decision, we are therefore aided but little by legislative language or prior decisions of our Court. However, we do have the assistance of two influences, neither of which is based upon our case law directly, but both of which are persuasive. One is the long continued and consistent interpretation of our statutes by the Attorney General of this State, to the effect that section line highways are open to the public without any action having been previously taken by a township or county board. The second is that the State of South Dakota, which inherited the same territorial legislation we have described above, has constantly and forthrightly held to the same effect.

The South Dakota Supreme Court in Lawrence v. Ewert, 21 S.D. 580, 114 N.W. 709 (1908), made this statement:

"It will be observed that by the act of 1871 the lawmaking power has clearly expressed its intention in language susceptible of but one construction. The expression, 'all section lines shall be and are hereby declared public highways as far as practicable,' was evidently intended to make every section line in the then

territory and now state a highway over which the people of the state would have an easement and right of way subject to the qualifications therein contained for the purpose of passing from one section of the state to another. Declaring section lines 'public highways' means that they are roads which every citizen has a right to use. . . . The Legislature evidently intended that the term 'highway' as used in the law of 1871 should have the ordinary meaning, and that section lines throughout the territory as far as practicable, and not interfering with the then existing highways in the settled portions of the territory, should be open to the use of the public, and no action of boards of county commissioners or supervisors of townships is required to establish or open such highways as are practicable on section lines. The highways so established by the legislative authorities cannot lawfully be obstructed by private citizens until changed or vacated in the manner provided by law. . . .

"Appellants attach much importance to the clause, 'as far as practicable'; but it is quite evident that the only purpose of that qualification was to relieve the counties from the expenditure of money in the opening of highways not practicable without such expenditure, and do not limit or qualify the general language of the section, providing that 'all section lines shall be and are hereby declared public highways,' as applicable to section lines which could be used as such highways without any additional expenditure of money or labor thereon." Lawrence v. Ewert, *supra*, 114 N.W. 709, at 710, 711.

The foregoing language from Lawrence v. Ewert, *supra*, was excerpted and included the North Dakota decision in Koloen v. Pilot Mound Township, *supra*, with apparent approval.

Also, in the *Koloen* case this Court, in describing the ways in which a public highway could be established, made this statement, admittedly dictum but provocative nevertheless:

"(1) Section lines *whether traveled or not* were already highways by virtue of legislative declaration, and *might be traveled and subjected to such use as far as practicable.* . . ." [Emphasis supplied.] 157 N.W. at 673.

The South Dakota Court has continued to uphold the doctrine it established in Lawrence v. Ewert, *supra*. Lowe v. East Sioux Falls Quarry Company, 25 S.D. 393, 126 N.W. 609 (1910); Pederson v. Conton Township, 72 S.D. 332, 34 N.W.2d 172 (1948); Costain v. Turner County, 72 S.D. 427, 36 N.W.2d 382 (1949).

The Attorney General of North Dakota has also quite consistently held that no action is required in order to open a section line for travel. On May 24, 1933, an opinion was given:

" . . . that the congressional section lines in this State are public highways, and that no official action is necessary on the part of the County Commissioners or township supervisors. . . .

"It follows, therefore, that if any person extends a fence across such section line, in so doing he obstructs the public highway and a traveler may remove the same."

After a somewhat equivocal opinion on the same general subject matter on July 12, 1946, to the effect that nonowners cannot be prevented from using the section line as a private road, the Attorney General on April 19, 1963, citing Lawrence v. Ewert, *supra*, gave as the opinion of his office " . . . that all congressional section lines in this state are open to travel by the public without the necessity of any action being taken by the board of county commissioners or township supervisors, as the case may be, and such members of the public as wish may use such section lines the same as they would any other public roadway." His position was adhered to on May 16, 1968, when the Attorney General also commented that Section 24–06–28, N.D.C.C. (providing for nonprohibition of construction of fences

but subjecting them to removal) was enacted subsequent to the statute which is now Section 24–07–03, N.D.C.C. (derived from the 1897 legislation mentioned above which declares that section lines shall be considered public roads), and the Attorney General concluded that the Legislature could not alter such acceptance by subsequent legislation, citing Huffman v. Board of Supervisors, *supra*. The Attorney General also gave his opinion that Sections 24–06–28, 24–06–29 and 24–06–30, N.D.C.C., are applicable to section lines over which travel is impossible because of terrain or natural barriers. In language pertinent to the present case, the Attorney General stated that Section 24–06–28, N.D.C.C., permits the erection of a fence on a section line not open for travel, but the right is inferior to that of the public who travel the section line, and if the section line is in fact traveled, the person who fences the line may be required to move the fence.

While we are not bound to follow opinions of the Attorney General of this State or the decisions of courts of other states, we give them respectful attention and follow them when persuasive. We are persuaded by them here.

In addition, for whatever it is worth, we add that it is our understanding that the "conventional wisdom" of the bench and bar of North Dakota through the years has been in accord with the decision we make in this case. Particularly, we believe, is this true in the western part of North Dakota where unfenced and unimproved section lines are more common than in the eastern part of the State.

We hold that congressional section lines outside the limits of incorporated cities, unless closed by proceedings permitted by statute, are open for public travel without the necessity of any prior action by a board of township supervisors or county commissioners.

The judgment is reversed and the case is remanded with instructions to direct the removal of the intervenors' fences.

ERICKSTAD, C. J., and KNUDSON, J., concur.

JOHNSON, Judge (dissenting).

While the majority opinion may be in accord with "conventional wisdom" as expressed by the opinions of the Attorney General, it is not consistent with a considerable number of legislative enactments and opinions of this court. I believe these matters can be best reconciled by distinguishing between the grant and acceptance of a right-of-way easement and the opening of a public highway. The fact that the Territorial Legislature accepted a right-of-way easement from the federal government does not mean that the Territorial Legislature and the subsequent state legislative assemblies have opened up public highways on every section line within this state.

It has apparently been widely assumed that the status of rights-of-way on section lines has been long resolved, but an examination of the cases and statutes reveals that this is only partially true. The cavalier analysis of Judge Robinson, in a concurring opinion, may have greatly contributed to this:

"By the statutes of the United States, and of this state, and by universal custom, the land for two rods on each side of a section line is a highway and the public have a right to use the same as a highway without any order opening it.

"The question is so well settled there is no occasion for discussing it. Hence appellant had no right to fence or obstruct the section line highway, and the township supervisors had a right to open it without any petition." Huffman v. Board of Supervisors of West Bay Township, 47 N.D. 217, 182 N.W. 459, 461 (1921).

Judge Robinson, however, spoke only for himself. The majority opinion was specifically limited in its application.

"*Whatever difference of opinion may exist as to whether any proceedings are*

*necessary to open a highway on a section line—and upon this we express no opinion*—there could be no question but that no proceedings are necessary to establish a highway on a section line." Huffman v. Board of Supervisors of West Bay Township, 182 N.W. 461. [Emphasis supplied.]

The source for the section line right-of-way goes back over a century to 1866. At that time, shortly after the close of the Civil War, Congress enacted a grant for rights-of-way over public lands.

"The right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted." Act of July 26, 1866, Ch. 262, § 8, 14 Stat. 253, 43 U.S.C. § 932.

This Act has been construed as an offer to dedicate public lands for highway purposes, with the dedication becoming effective upon acceptance in accordance with the law of the state or territory where the land is located. See Pederson v. Canton Tp., 72 S.D. 332, 34 N.W.2d 172 (1948); Hillsboro Nat. Bank v. Ackerman, 48 N.D. 1179, 189 N.W. 657 (1922).

The key Act for the states of North Dakota and South Dakota is Chapter 33 of the Session Laws of the Dakota Territory for the year 1871, which accepted the right-of-way across section lines. This action may be considered in conjunction with Section 247 of the Civil Code for the Dakota Territory which recognized the right-of-way easement as an interest in real estate. Ch. 8, S.L.1870–1871, at 50.

The territorial legislature amplified upon that action in 1883.

"In all townships in this Territory in which no public roads have been laid out, or which have not been organized, *the congressional section lines shall be considered public roads, to be opened* to the width of two rods on each side of such section lines, *upon the order of the board of supervisors*, without any survey being had, except where it may be necessary on account of variations caused by natural obstacles, * * * " Ch. 112, S.L.1883, at 257. [Emphasis supplied.]

Certain characteristics of the section line right-of-way are clear from subsequent decisions. Roads may be constructed in the four-rod area along the section lines without compensation to the adjoining landowners. Faxon v. Lallie Civil Township, 36 N.D. 634, 163 N.W. 531 (1917); Wenberg v. Gibbs Township, 31 N.D. 46, 153 N.W. 440 (1915); Riverside Township v. Newton, 11 S.D. 120, 75 N.W. 899 (1898). The right-of-way is an easement for highway purposes only and ownership of the underlying fee remains in the adjoining owners. Rutten v. Wood, 79 N.D. 436, 57 N.W.2d 112 (1953). The right-of-way easement along the section lines is already perfected and no additional proceedings are necessary to confirm it.

The question is whether the section lines were automatically opened as public highways by the Act of the legislature or whether some additional act of the state or its political subdivisions is necessary. The problem can be better resolved by distinguishing between the incidents of the right-of-way as an interest in real estate and the power of the state in establishing and opening public highways. The Territory of Dakota, and its successor, the State of North Dakota, accepted the right-of-way easement across section lines as trustee for the public by the Act of 1871. See Lalim v. Williams County, 105 N.W.2d 339, 343 (N.D. 1960). This trust is not merely passive but gives the trustee possession, control and supervision of the trust property. See Union Coal Co. v. City of LaSalle, 136 Ill. 119, 26 N.E. 506 (1891); Good Humor Corporation v. City of New York, 33 N.Y.S.2d 905 (1942), aff'd, 264 App.Div. 620, 36 N.Y.S.2d 85 (1942), rev'd on other grounds, 290 N.Y. 312, 49 N.E.2d 153 (1943); Barnwell Bros. v. South Carolina State Highway Dept., 17 F.Supp. 803 (1937), rev'd on other grounds, 303 U.S. 177, 58 S.Ct. 510, 82 L.Ed. 734 (1938).

The right-of-way easement is subject to the governmental authority of the state,

under its police power, to establish, open, construct, maintain, abandon, or close public highways. See Zueger v. Boehm, 164 N.W.2d 901 (N.D.1969); Chandler v. Hjelle, 126 N.W.2d 141 (N.D.1964); Smith v. State Highway Commission, 185 Kan. 445, 346 P.2d 259, 267 (1959). The state, its political subdivisions, municipal corporations and other units of local government are the vehicles by which public roads and highways are established and maintained. It is incongruous to presume that rights-of-way for public use, accepted by action of the state, or its predecessor, are not subject to regulation and control by the state.

This fact was recognized by the State Legislature in 1897 when it passed an Act providing that:

> "In the opening, vacating or changing of a highway outside of the limits of incorporated cities, villages or towns, all proceedings relating thereto to acquire right of way and to all other matters connected therewith shall be under the charge and in the name: * * * [the board of county commissioners if territory is not organized into a township, the board of township supervisors of an organized township, and combinations of such boards where the road adjoins townships or counties]" Ch. 112, § 4, S.L.1897, at 213.

This legislation has continued without substantial change to the present. See Section 24–07–04, N.D.C.C.

I am persuaded the Legislature intended that control over the section line rights-of-way be vested in the boards of township supervisors, or the boards of county commissioners. Included within this jurisdiction is the "opening" and "closing" of public highways on the section lines. In addition

to the specific statute in question here, the legislature has adopted a variety of other statutes dealing with section lines and opening highways. These include authority for opening a cartway (§ 24–07–06), removal of fences when a road is opened (§§ 24–06–30 and 24–07–19), authorization for fences when section lines are not opened (§ 24–06–28), authority to place obstructions within thirty-three feet of the section line (ibid.), vacation of roads not "open for public use" (§ 24–07–31), closing section line roads intercepted by interstate highways (§ 24–07–03), and appeals from decisions relating to public roads (§ 24–07–22).

Our present legislation regarding public highways incorporates a total governmental framework for dealing with this complex area. One chapter of our Code deals with the state highway system (Ch. 24–01), another with the state highway commissioner (Ch. 24–02), another with the county road system (Ch. 24–05), and yet another chapter deals with local roads (Ch. 24–06). Legislative intent is specifically stated in Section 24–01–01, N.D.C.C., where broad authority is granted the state highway commissioner to plan, develop, operate and maintain the state highway system. In addition, "it is the further intent of the legislative assembly to bestow upon the boards of county commissioners similar authority with respect to the county road system and to local officials with respect to the roads under their jurisdiction."

Where possible, we must give effect to all of these statutes and attempt to harmonize their meaning and application. Interwoven through these statutes is the necessary implication that "opening" the public highway is an official act of the board having jurisdiction of the area in which the highway is located.[1] The term "opening" as applied to

---

**1.** "In all townships in this state outside the limits of incorporated cities, the congressional section lines shall be considered public roads, *to be opened to the width of two rods on each side of such section lines, where the same have not been opened already upon the order of the board having*

*jurisdiction,* * * * *"* Sec. 24–07–03, N.D.C.C. (Emphasis supplied.)
"The provisions of this section shall not prohibit construction of fences along or across *section lines not open for travel* but such fences shall be subject to removal as provided in section 24–06–30." Section 24–06–28, N.D.C.C. (Emphasis supplied.)

a public street or highway is usually intended to mean placing the highway in condition for use or placing the highway at the service of the public. A right-of-way which might have had only a legal or paper existence is thereby given over to actual highway use.

It was recognized at an early date that the act of the territorial legislature in accepting the rights-of-way was not self-executing in terms of creating open public highways. As the South Dakota Supreme Court stated in 1896:

> "As the question of interference and practicability must be considered and determined by proper authority, and in the manner provided by law, before a section line can become a confirmed highway, open for public travel, it is obvious that something beyond the declaration of said section is essential to the establishment of a public highway upon a section line." Keen v. Board of Supervisors, 8 S.D. 558, 67 N.W. 623, 625 (1896).

This court confirmed the necessity for governmental action in the case of Hillsboro Nat. Bank v. Ackerman, 48 N.D. 1179, 189 N.W. 657, 659 (1922):

> "In conclusion, it may be observed that there can be no doubt that section lines are public roads. Section 1920, C.L. They may be opened upon compliance with that section and other relative laws by those having jurisdiction to do so, and who are specified in section 1921, C.L., and this without any survey being had,

except where necessary by variations caused by natural obstacles."

The South Dakota case of Lawrence v. Ewert, 21 S.D. 580, 114 N.W. 709 (1908), cited by the majority, was relied upon by the attorney general in concluding that the section lines were open highways. However, the three-judge court split three ways in that case. One judge concurred in the result and another dissented. The "majority" opinion in that case does not examine previous cases or legislation indicating a contrary result and does not consider the distinction between the right-of-way as a real estate interest and the governmental authority over public highways. It must be remembered that a public highway has two essential attributes—public access and use and public maintenance. See Prillaman v. Commonwealth, 199 Va. 401, 100 S.E.2d 4 (1957); State v. Schmidt, 252 Wis. 82, 30 N.W.2d 220 (1948); Nixon v. Edwards, 72 Wyo. 274, 264 P.2d 287, 293 (1953); Hildebrand v. Southern Bell Telephone & Tel. Co., 219 N.C. 402, 14 S.E.2d 252 (1941). I am not persuaded that the Legislature intended to require counties and townships to bear the expense of maintaining roads on every section line in this state. The Legislature has distinguished between section lines that have been opened as public highways and those which have not.[2] Adjacent landowners have some rights of use to unopened section lines.[3] The criminal sections attributable to open public highways in general appear difficult of application to unopened section lines.[4]

"In case any person shall place or cause to be placed any stones or rubbish within thirty-three feet of any section line, the board of county commissioners or board of township supervisors, as the case may be, *when a public highway is opened along such section line,* shall notify the owners of adjacent property to remove such stones or rubbish." Section 24–06–29, N.D.C.C. (Emphasis supplied.)
"*When a public highway is opened along any section line within the state,* the board of county commissioners or the board of township supervisors, as the case may be, shall notify the owner of adjacent property

to remove any fences \* \* \*" Section 24–06–30, N.D.C.C. (Emphasis supplied.)

2. See statutes cited in n. 1.

3. See e. g., Section 24–06–28, authorizing adjacent landowners to place fences and other obstructions on unopened section lines.

4. E. g., Section 24–12–01, N.D.C.C., makes it a criminal offense to dig up any public highway area used in connection with a public highway, and Section 24–12–02, N.D.C.C., makes it a criminal offense to obstruct any public highway.

Sound public policy would appear to require the exercise of judgment and discretion by the local governing body as to the opening of a public highway on a section line. There are several factors that a board might consider as relevant to its decision on opening a section line as a public highway. Included among these are (1) public convenience and necessity with respect to such a road, (2) financial ability of the governmental body to perform whatever construction and maintenance may be necessary to obtain an open road on such section line, (3) the feasibility of such a road based upon existing topography and soil conditions, and (4) any legislative restrictions or directions on establishment of a road system.[5]

I would therefore conclude that, except where section lines have been established as highways by prescription—public use for the prescribed term (see § 24–07–01)—sec-

tion lines are opened as public highways by the action of the township or county board having jurisdiction. In most cases this could be accomplished simply by an order of the board declaring certain section lines opened as public highways, to a width of up to two rods on either side of the section line. In this regard see Hillsboro Nat. Bank v. Ackerman, *supra*, where a township board declared all section lines in the township opened as public highways, or Faxon v. Lallie Civil Township, *supra*, where four miles of section lines were declared open.

PAULSON, J., concurs.

---

**5.** See e. g., Section 24–05–16, N.D.C.C., limiting the county road system to 22,500 miles with percentages of such total assigned to each county. See also, Section 24–05–20, N.D.C.C., regarding back sloping of county and township roads, and Section 24–05–21, N.D.C.C., regarding inslopes at place of intersection.