# NORTHERN PACIFIC RAILWAY COMPANY v. HARRIET A. BARLOW.

### (143 N. W. 903.)

**Railway company — location of right-of-way — completion of grade for ties and rails — plat and profile — approved by secretary of interior.**

A definite location of the right of way of a railway company which will entitle it to the benefits of the act of Congress of March 3, 1875, granting lands to railroads, is made by the completion of the grade ready for the ties and rails which has been preceded by the approval of a plat and profile of such road by the Secretary of the Interior, even though there is no proof that such plat was ever filed in the land office of the district in which the land is situated.

Opinion filed October 23, 1913.

Appeal from the District Court for Foster County, *Burke*, J.

Action to quiet title to real estate.

Judgment for plaintiff. Defendant appeals.

Affirmed.

Substituted opinion filed pursuant to rule 19, Revised Rules of Practice, after considering petition for rehearing.

Statement by BRUCE, J.

This is an action to determine adverse claims, and to quiet title in the plaintiff to a strip of land 200 feet in width used as a railroad right of way across the southwest quarter of section 16, township 147, range 66 in Foster county, North Dakota. In it a counterclaim is filed by the defendant, praying that the title to the land be quieted in her and that the action of plaintiff be dismissed. The trial court found the issues for the plaintiff and quieted the title in it. From this judgment this appeal is taken and a trial *de novo* is asked. The case came before this court on a prior appeal in the case of Northern P. R. Co. v. Barlow, 20 N. D. 197, 126 N. W. 233, Ann. Cas. 1912 C, 763, but nothing in that case was decided in relation to the merits; the only question decided being that a stipulation was and must be considered a part of the record. The claim of the railway company to the right of way in question is based upon an alleged compliance with the provisions of the act of Congress of March 3, 1875, granting to railroads the right of way over the public lands of the United States (18 Stat. at L. 482, chap. 152; U. S. Comp. Stat. 1901, p. 1568).

*John Knauf* and *S. E. Ellsworth,* for appellant.

It was necessary for plaintiff to have provided *fixity* of location upon the ground, as well as fixity of grantee. Dakota C. R. Co. v. Downey, 8 Land Dec. 115.

Defendant's devisor's title to the whole of the land became perfect by patent issued November 7, 1888. This title related back to July 22, 1883, the date of Barlow's settlement upon the land, and was sufficient to cut out and destroy any intervening right subsequent to July 22, 1883. Shepley v. Cowan, 91 U. S. 338, 23 L. ed. 427; Sturr v. Beck, 133 U. S. 541, 33 L. ed. 761, 10 Sup. Ct. Rep. 350.

The map or profile of plaintiff's right of way over Barlow's land was not filed in the local land office until August 6, 1883. Northern P. R. Co. v. Barlow, 20 N. D. 197, 126 N. W. 233, Ann. Cas. 1912 C, 763.

Definite location does not occur or is not established until map or

profile is filed, *and* until there is some work of *construction,* aside from the survey marked out by stakes. Doughty v. Minneapolis, St. P. & S. Ste. M. R. Co. 15 N. D. 290, 107 N. W. 971.

There is a difference between a mere location, movable at will, and the actual construction of the road, *fixing* its position, towards the consummation of the purpose for which the grant of a right of way was given. Minneapolis, St. P. & S. Ste. M. R. Co. v. Doughty, 208 U. S. 251, 52 L. ed. 474, 28 Sup. Ct. Rep. 291.

*Watson & Young,* for respondent.

The railroad company fully complied with the terms of the act when it presented to the Secretary of the Interior and secured his approval of its profile map of definite location. The railroad company's title to right of way so fixed cannot depend upon the entering of notations, either in the general or local land office. The roadbed was completed before Barlow entered upon the land. See Secretary Vilas' Opinion, Re Downey.

All acts necessary and requisite to establish *fixity* were done before Barlow made entry. Stalker v. Oregon Short Line R. Co. 225 U. S. 142, 56 L. ed. 1027, 32 Sup. Ct. Rep. 636.

BRUCE, J. (after stating the facts as above). The evidence is undisputed that a survey of the strip in question was made in September and October, 1881, was adopted by action of the board of directors of the Jamestown & Northern Railway Company (the plaintiff's assignors), on October 5, 1882, and was approved by the Secretary of the Interior on June 26, 1883. How long prior to the approval of the plat and profile the same were on file in the office of the Secretary of the Interior does not appear, nor does it appear how the same came into the possession of the Secretary. There is a stipulation, however, which, under the decision in Northern P. R. Co. v. Barlow, 20 N. D. 197, 126 N. W. 233, Ann. Cas. 1912 C, 763, we must recognize, to the effect that "on the said 22d day of July, A. D., 1883, intending to make entry of the said land herein described when the same was surveyed, and to acquire title to the same by virtue of compliance with the pre-emption laws of the United States, said Frederick G. Barlow settled upon said land and took up his residence thereon. At the time of such settlement there

26 N. D.—11.

was not a railroad track or line of railroad in operation across said land at any place, nor had plat or profile of the section of railroad extending across said land hereinbefore referred to been filed in the United States District Land Office at Fargo." We find from the evidence that, although Barlow entered upon the land upon the 22d day of July, A. D., 1883, the grading of the road across said land was completed prior to May 31, 1883; that is to say, nearly two months before his settlement. We also find that the rails were laid upon the grade between August 10 and 15, 1883, and that trains were operated on said road and across said land soon after. Under the stipulation we are constrained to hold that up to the time of said entry no plat had been filed in the local land office; and it is for us, therefore, to determine whether the surveying of a road across a quarter section of government land, the construction on said land of a grade ready for the ties and rails, and the approval of the map and profile of the road and survey by the Secretary of the Interior prior to the entry of the settler, gives to the railway company title to such right of way which is superior to that of the entryman. We are quite satisfied that it does.

The act of Congress of March 3, 1875, 18 Stat. at L. 482, chap. 152, U. S. Comp. Stat. 1901, p. 1568, provides among other things: "That the right of way through the public lands of the United States is hereby granted to any railroad company duly organized under the laws of any state or territory except the District of Columbia, or by the Congress of the United States, which shall have filed with the Secretary of the Interior a copy of its articles of incorporation and such proofs of its organization under the same, to the extent of 100 feet on each side of the central line of said road. . . . Section 4. That any railroad company desiring to secure the benefits of this act shall within twelve months after the location of any section of 20 miles of its road, if the same be upon surveyed lands, and if upon unsurveyed lands within twelve months after the survey thereof by the United States, file with the register of the land office for the district where such land is located a profile of its road; and upon approval thereof by the Secretary of the Interior the same shall be noted upon the plats in said office; and thereafter all such lands over which such right of way shall pass shall be disposed of subject to such right of way."

The uniform construction of this act has been that it is a grant "in

*præsenti* of lands to be thereafter identified." Jamestown & N. R. Co. v. Jones, 177 U. S. 125, 44 L. ed. 698, 20 Sup. Ct. Rep. 568; Denver & R. G. R. Co. v. Alling, 99 U. S. 463, 25 L. ed. 438. In the case of Jamestown & N. R. Co. v. Jones, supra, it was held that such definite location was made and a prior right superior to that of subsequent settlers acquired, provided the road was actually constructed across the land in question prior to such entry, and even though no plat had been filed either in the local land office or with the Secretary of the Interior. In the case of Minneapolis, St. P. & S. Ste. M. R. Co. v. Doughty, 208 U. S. 251, 52 L. ed. 474, 28 Sup. Ct. Rep. 291, the court, though affirming the ruling in Jamestown & N. R. Co. v. Jones, supra, held that no such definite location was accomplished by the mere surveying of the line and the driving of stakes, as such location could be easily altered. In the case of Stalker v. Oregon Short Line R. Co. 225 U. S. 142, 56 L. ed. 1027, 32 Sup. Ct. Rep. 636, the court held that where the road had been physically located and the plats filed, the mere failure of the register of the land office to note the location upon the plats in his office did not affect the right of the railway company. In passing upon the question the court said: "The initiatory act to which the final act of approval relates *is the filing with the Secretary of the Interior of the map of definite location.* The mere surveying and staking of a route is the tentative act of the railroad. It might at will select a different route and move its stakes. But when it adopts a route definitely, and then causes a map of such route to be filed in the land office of the district, in duplicate, and then filed with the Secretary of the Interior, a right is thereby initiated which, until disposed of, rightly precludes the creation of a later right, and gives to the company, as prior in time, priority in right. . . . It is next said that the register did not, after a copy of the approved map of station grounds had been transmitted to him, mark the proper township plat and tract books, as required by the regulations of the Land Department, so as to show the station land selected. This notation on the books of the local land office is for the purpose of giving notice to future enterers. But this was not required to be done until the receipt in the land office of the approved plat of station grounds. That approval did not occur until December 15, 1888. Reed filed his right of pre-emption October 18, 1888, a date antecedent to any possible no-

tation. He could not, therefore, have been misled, but, on the other hand, *had the constructive notice which came from the then pending proceedings before the Secretary of the Interior.* But aside from this, there are two answers to the contention: First, if we are right in holding that the grant vested in the company when the plat was approved, as of the date when filed, the failure of the officer in the district land office to properly mark the plat could not operate to defeat the grant; and, secondly, the railway company, having done everything which it was required by law to do, should not be affected by the negligence of the register in not doing a duty upon which the vesting of title as against the United States did not depend. If the taking effect of the grant had been made to depend upon his properly marking the plat books, there would be no room for the doctrine of relation to the initiatory step of filing the plat of selection. As that is not the case, *his neglect to do something not vital to the vesting of title will not defeat the title so vested.*"

We are quite satisfied from these decisions that what the act of Congress aimed at was a fixity of location; that is to say, a location which the railway company could not change at will in case it later found a route which was more advantageous to it. The Supreme Court of the United States held in the case of Jamestown & N. R. Co. v. Jones, supra, that the construction of the road, in the absence of the filing of and approval of a plat, constituted a location. It is held in the case of Stalker v. Oregon Short Line R. Co. supra, that a notation upon the plat in the local land office was not an initiatory step upon which the right depended. In the case at bar, the railroad company had not merely practically constructed the road at the time of the entry, but the plat had been approved at Washington. The facts of the case would come within those of Jamestown & N. R. Co. v. Jones, but for the fact that there is no proof that the ties and rails were laid at the time of the entry, though there is proof that this was the fact some eighteen days later. It is, however, stronger than the Jamestown Case on account of the fact that the plat had been approved at Washington and that the railway company was powerless to then change the location. There can be no doubt, indeed, that the route was fixed both on account of the physical construction and the difficulty of a subsequent removal, and on account of the fact that its offer of a permanent loca-

tion had been accepted by the Federal authorities. The entryman in this case can have no more ground for complaint than could the entryman in the case of Stalker v. Oregon Short Line R. Co. supra. It would be absurd to hold that one who enters upon land and sees upon it a railroad grade which is only eighteen days from physical completion, and, as we have a right to believe, but a link in miles of road stretching across the same prairie, was not aware of this prior railroad occupation. Added to this is the fact that there is no showing that the entryman himself ever asserted any claim against the road, and that a station was put in at or near the point and named after him, in the neighborhood of which he lived for some time. It is his widow devisee, merely, who is found to protest. No one would contend that, on account of the failure to file the plat in the local land office, he was induced to settle upon land which otherwise he would not have occupied, or that the location of the road did not increase the value of his land, nor is there any evidence to the effect. According to the case of Stalker v. Oregon Short Line R. Co. he must be imputed with constructive notice not merely of the construction of the grade, but of the proceedings at Washington. The fact is that much as we may clamor for damages when a railroad right of way is sought to be condemned across our lands when railroads are plentiful and near at hand, the proximity of a railroad in a new country is a thing which the intending settler most desires. The question is, after all, one for the Supreme Court of the United States, and not for us to ultimately decide, and all that we can do is to seek to interpret the prior decisions of that tribunal. This we have attempted to do, and our conclusion is that the judgment of the District Court should be affirmed, and it is so ordered.

Having passed upon the merits of this case and resolved the controversy in favor of the respondent, it is unnecessary for us to treat the motion to dismiss the appeal with any particularity. It is sufficient to say that a majority of the court is of the opinion that it lacks in merit.

BURKE, J., being disqualified, did not participate.