JOHN D. FAXON v. CIVIL TOWNSHIP OF LALLIE, BENSON COUNTY, NORTH DAKOTA.

(163 N. W. 531.)

**Public lands — in territory or state of North Dakota — title thereto — never in Indians.**

1. The public lands situated in the territory of Dakota and state of North Dakota at no time belonged to the Indians, and the courts have never recognized any title in the Indians thereto.

**Highway — opening — board of supervisors — Indian reservations — open to settlement — owners — compensation — land so taken and used.**

2. A board of supervisors may open a highway along the section lines of the former Indian reservations of North Dakota, and which have now been thrown open to settlement, without compensating the owners of the land for the 66-foot strip of right of way occupied and taken.

**Indian reservation — act of Congress — highways — laying out — opening — right to — acceptance of — grant — relates back to.**

3. The acceptance by chapter 33 of the Laws of 1871 of the right of way for the construction of highways on public lands granted by the Act of Congress of 1866 related back to and became effective from the date of the grant, and has not been revoked by the subsequent use of a portion of such lands as an Indian reservation, nor by §§ 3 and 22 of chapter 112 of the Session Laws of 1897 and § 3 of chapter 97 of the Session Laws of 1899. It may, therefore, be asserted against one who filed upon a portion of the land after a throwing open of the reservation for settlement in 1904.

Opinion filed May 29, 1917.

Appeal from a judgment of the District Court of Benson County, Hon. *C. W. Buttz,* Judge, dismissing an appeal from an order of the

Board of Supervisors of the Township of Lallie providing for the laying out and establishing of a public highway.

Judgment for defendant. Plaintiff appeals.

Affirmed.

*S. E. Ellsworth,* for appellant.

*T. H. Burke* and *E. T. Burke,* for respondent.

BRUCE, Ch. J. This is an appeal from a judgment affirming an order of the Board of Supervisors of the Civil Township of Lallie in Benson County, North Dakota, in a proceeding for the establishment of a public highway under the provisions of article 1 of chapter 31, Political Code, being §§ 1918–1939, Compiled Laws of 1913. The appeal from the order of the board of supervisors is taken under the provisions of § 1938, Compiled Laws of 1913.

It appears that the township board of supervisors, in June, 1915, declared 4 miles of section line open as a highway. Five eighths of a mile of this runs through the farm of the plaintiff and appellant, whose land lies upon each side of the section line. The only question at issue in this case is whether the plaintiff should be paid for the 33-foot strip which lies on each side of the section line. The township claims an easement or right to use the road under the Public Highway Act of Congress, dated July 26, 1866, which provides that "the right of way for the construction of highways on public lands not reserved for public uses is hereby granted." It claims that this act granted section lines, and that this act or grant was accepted by the territory of Dakota by the Act of January 12, 1871, being chapter 33 of the Session Laws of that year, which provided that "hereafter all section lines in this territory shall be and hereby are declared public highways as far as practicable." There can be no question that the lands in question, at the time of the passage of these acts, were part of the public domain. Appellant, however, contends that they were reserved for public uses, and, therefore, that the right of way was not granted or accepted over them. He maintains that they were part of the Devils Lake Indian Reservation at the time of the passage of the acts in question, and that land reserved for such reservations was land which was reserved for a public use. If no right of way then was granted to the state, he contends that the road

can only be opened upon paying to the owner of the land his proper damages, which would include the value of the strip taken.

In this we believe he is in error. The Devils Lake Reservation was not set apart until June 22, 1874, when a treaty was made with the Indian tribes in relation thereto. The grant was made by Congress in 1866, and accepted by the territory in 1871, for we have held that the Territorial Act of 1871, before referred to, constituted an acceptance of the congressional grant. See Wenberg v. Gibbs Twp. 31 N. D. 49, 153 N. W. 440; Walcott Twp. v. Skauge, 6 N. D. 386, 71 N. W. 544; Wells v. Pennington County, 2 S. D. 1, 39 Am. St. Rep. 753, 48 N. W. 305. This and other courts have also held that the Federal Act of July 26, 1866, from its clear wording conveys a present grant; when, therefore, the provision was acted upon and accepted by the territory, such acceptance related back and became effective from the date of the grant. Walcott Twp. v. Skauge, 6 N. D. 388, 71 N. W. 544; Wells v. Pennington Twp. 2 S. D. 6, 39 Am. St. Rep. 758, 48 N. W. 305; Leavenworth, L. & G. R. Co. v. United States, 92 U. S. 733, 23 L. ed. 642; St. Joseph & D. C. R. Co. v. Baldwin, 103 U. S. 426, 26 L. ed. 578; Wright v. Roseberry, 121 U. S. 506, 30 L. ed. 1044, 7 Sup. Ct. Rep. 985; French v. Fyan, 93 U. S. 169, 23 L. ed. 812; Northern P. R. Co. v. Barlow, 26 N. D. 159, 143 N. W. 903, 240 U. S. 484, 60 L. ed. 760, 36 Sup. Ct. Rep. 456.

If, therefore, at the time of the grant the land belonged to the United States, the highway was created in 1871, and the plaintiff has no right therein, unless, perhaps, the subsequent setting apart of the territory as an Indian reservation in 1874 reserved the land for a public use, and repealed the prior grant.

We are satisfied that the reservation in question was never at any time property which belonged to the Indians. Whether rightfully or wrongfully, the courts have never recognized any title in the Indians to the lands of the United States, except as we have chosen to specifically grant it.

The history of the territory is as follows: In 1609 Henry Hudson discovered the bay which was named after him. In 1669 the Hudson Bay Company was charactered by Charles the Second, and to it was given the basin of Hudson bay including the valleys of the Red River of the North, the Sheyenne and Devils lake. The French owned the

valley of the Missouri, thus splitting it into two parts, separated by the line now-represented by the main line of what is known as the Soo Railroad. After the Revolutionary War the northwestern half of the state was ceded by the treaty of Paris by England to the United States. Sixteen years later the other half of the state was purchased from France as a part of the so-called Louisiana Purchase. Settlement was made by the whites at Pembina as early as May 17, 1801, and the country from that time was continuously occupied by white settlers. It is true that during this time various Indian tribes claimed all of the state, as well as Minnesota and Iowa, but the Indians were always treated as subjects of the country, the land as public domain, and the Indians merely as licensees. It was when they were thus occupying the land in this general way that the Act of 1866 was passed by Congress, which granted the public highways to the several states, and which was accepted in 1871 by the territory of Dakota. The Indians were then gradually moved westward, and in 1874 a treaty was made with the Sisseton and Wahpeton Band of Sioux Indians, whereby they were paid the sum of $80,000 for a relinquishment of all of their claims in the basin of the Red river and Devils lake, and were granted the right to the use of the reservation, commonly known as the Devils Lake Indian Reservation.

It is clear that when the reservation was accepted by the Indians, the highway act had been in effect over eight years and.had been accepted for three years. It is also clear that the right granted to the state was not in the nature of a license, revocable at the pleasure of the grantor, but that highways once established over the public domain, under and by virtue of the act became vested in the public, who had an absolute right to the use thereof which could not be revoked by the general government, and that whoever thereafter took the title from the general government took it burdened with the highways so established. Walcott Twp. v. Skauge, 6 N. D. 388, 71 N. W. 544.

Even, indeed, if we concede that the setting apart of a tract of land for an Indian reservation is a public use, and on this we express no opinion, there is nothing in the statutes or in the decisions which leads us to believe that it was ever intended to devest the public of the highway rights before granted, or, at any rate, that when the reservations were again opened to the public, as the Devils Lake Reservation was in June 2, 1904, the old rights could not be asserted.

The situation was this: At the time the Act of July 26, 1866, was approved, the land in controversy was Indian country; *i. e.*, the claims of the Indian tribes had not at that time been extinguished, but the fee was in the United States; the Indians having merely a right of occupancy, subject to the dominion and control of the government and its right to convey the land in fee. In 1874 the reservation was created. Prior to that time, however, and by the Federal Acts of 1866, and the Territorial Act of 1871, the right of a public highway had been granted to the state. The land could be settled or temporarily set apart for reservation purposes, but the vested rights could not be taken away. If the occupancy by the Indians and the creation of the reservation were a public use, then that public use ceased in 1904, when the reservation was opened for settlement. The right in the highways then, at the most, reverted to the original grantee, the state, the same as the right of way of a railway company would revert to the property owners or to the state if the railway use were discontinued.

Whatever may have been the status of the highways during the occupancy of the reservation by the Indians as a reservation, it is clear that when that use ceased and the lands were thrown open to settlement, such lands and such highways were governed by the law usually pertaining to the public domain. Prior to the opening of the reservation the lands had been surveyed. Prior to this time the highway grant by the Federal government had been accepted by the state. Immediately upon the throwing open of the reservation the grant again became operative. The Federal acts and the state acts were operative at that time. The land then became government land, subject to the highway right in the state. While it was in such a condition the plaintiff made his filing, and, of course, this filing was subject to the highway right.

But it is claimed that the right of way did not become a highway until it was surveyed, and that there is no proof in the record that any survey was made, or, rather, that the date of the survey is not proven. Section 7938 of the Compiled Laws of 1913, however, provides that the courts will take judicial notice of the government surveys and the legal subdivisions of public lands, and a perusal of volume 41, page 714, of the field notes of the United States Survey, now on file with the state engineer, will show that the survey was made between the 23d and 26th of August, 1875. Although this survey was not made until after the

reservation was established, and "the right acquired by the territory or the public was necessarily imperfect until the lands acquired for highways were surveyed and capable of identification, when the land was surveyed and the various section lines were designated to be highways as far as practicable," the right of the territory attached for that purpose, and took effect as of the date of the territorial law, it being remembered that the plaintiff did not settle upon the land until 1904. Wells v. Pennington County, 2 S. D. 10, 39 Am. St. Rep. 758, 48 N. W. 305.

But it is contended that the acceptance of the highway grant by the Territorial Act of 1871 and by § 1050 of the Revised Codes of 1895 was revoked and repealed by §§ 3 and 22, chapter 112 of the Session Laws of 1897, and again by § 3 of chapter 97 of the Session Laws of 1899. The acts in question are as follows:

Section 3, chapter 112, Session Laws 1897: "Section lines considered public roads, when. In all townships in this state in which no public roads have been laid out or which have not been organized, the congressional section lines shall be considered public roads, to be opened to the width of 2 rods on each side of such section lines, upon the order of the board of supervisors, without any survey being had, except where it may be necessary on account of variations caused by natural obstacles, subject, however, to all the provisions of this chapter in relation to assessment of damages."

Section 22: "Sections 1050, 1051, 1052, 1053, 1054, 1055, 1056, 1057, 1058, 1059, 1060, 1061, 1062, 1063, 1064, 1065, 1066, 1067, 1068, 1069, 1070, 1071, 1072, 1073, 1074, and 1075 of the Revised Codes of North Dakota be and the same are hereby repealed."

Section 3, chapter 97, Session Laws, 1899: "Section lines considered public roads, when. In all townships in this state outside the limits of incorporated cities, villages or towns, the congressional section lines shall be considered public roads, to be opened to the width of 2 rods on each side of such section lines, where the same have not already been opened upon the order of the board having jurisdiction as provided by § 4 of this chapter without any survey being had, except where it may be necessary on account of variations caused by natural obstacles, *subject, however, to all the provisions of this chapter in relation to assessments of damages.*"

It is contended by counsel for appellant that this supposed repeal of

the prior acceptance by the legislative assembly of 1897 was prompted by an attempt to prohibit any further establishment of highways upon section lines within the state without payment of just compensation for the land taken.

We do not, however, so understand the statutes. Both the Act of 1897 and the Act of 1899 are general highway acts and contain many other provisions than the one in question. The chapters, as we understand it, were intended to be as comprehensive as possible, and to cover, as far as possible, the whole subject. We cannot derive therefrom any intention that the rights and the property in the section lines, as highways, should be surrendered. The intention, we believe, was merely that where land other than the section lines was sought to be appropriated on account of necessary deviations from such section lines, or where the construction of the road would injure adjacent buildings or property by the removal of the lateral support, or otherwise, damages might be assessed. We can, however, find no intimation that the right to the easement should be surrendered, or that there should be a grant by the state to the landowner of that easement. This has been the former holding of this court, and we see no reason for departing from it. Wenberg v. Gibbs Twp. 31 N. D. 46–52, 153 N. W. 440; Walcott Twp. v. Skauge, 6 N. D. 382–388, 71 N. W. 544; Wells v. Pennington County, 2 S. D. 1, 39 Am. St. Rep. 758, 48 N. W. 305; Keen v. Fairview Twp. 8 S. D. 558, 67 N. W. 623.

The judgment of the District Court is affirmed.