**Iris BIRD BEAR and Rosalie Bird Bear (a/k/a Rose Chavarria), Appellants,**

**v.**

**McLEAN COUNTY et al., Appellees.**

**No. 74–1641.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 10, 1975.

Filed April 1, 1975.

Thomas K. Schoppert, North Dakota Legal Services, Inc., New Town, N. D., for appellants.

Andrew R. Tossett, Minot, N. D., for appellees.

Before MATTHES, Senior Circuit Judge, and STEPHENSON and WEBSTER, Circuit Judges.

STEPHENSON, Circuit Judge.

The issue on this appeal is whether section 8 of the Highway Act of 1866, 43 U.S.C. § 932 (1970) [hereinafter cited as Highway Act], granted an easement for section line roads over appellants' property which is operative notwithstanding the fact that the Indians appellants hold the land pursuant to a trust patent issued by the United States in accordance with 25 U.S.C. § 331 et seq. (1970). We find that the right of way granted by the Highway Act was not divested by the subsequent allotment and thus af-

firm the district court's [1] dismissal with prejudice of appellants' suit against the county and township seeking compensation.

The facts in this action were stipulated. Appellants Iris Bird Bear and Rosalie Bird Bear (a/k/a Rose Chavarria) are enrolled members of the Three Affiliated Tribes, Fort Berthold Reservation, North Dakota. They are joint tenants of approximately eighty acres of land in Loquemont County, North Dakota. This land was allotted to their father, Rabbit Bird Bear, on December 19, 1910, and has been held in trust by the United States since that time. Pursuant to 25 U.S.C. § 348, a trust patent was issued to Bird Bear in 1910 and is now held by appellants, to whom the land was transferred in 1952.

Appellee McLean County maintains a gravel road on the western edge of the Bird Bear allotment. Appellee Loquemont Township maintains a similar road on the southern edge of the property. These two roads diminish the allotment by approximately 1.8 acres. The roads were constructed along the section lines bordering the Bird Bear allotment pursuant to North Dakota Century Code § 24–07–03 (1970).[2]

■ Appellants brought suit under 25 U.S.C. § 345 (1970) [3] seeking damages from appellees either on the basis of trespass or of unlawful diminishment of their allotment without the consent of the Secretary of the Interior [4] or compliance with state condemnation procedures.[5] This appeal followed the district court's denial of appellants' motion for a partial summary judgment and dismissal of the complaint with prejudice, based upon the reasoning in Faxon v. Lallie Civil Township, 36 N.D. 634, 163 N.W. 531 (1917).[6]

1. The Honorable Bruce M. Van Sickle, United States District Judge for the District of North Dakota.

2. This present statute was derived from chapter 33 of the Session Laws of the Territory of Dakota 1870–71. That law was an acceptance by the territorial government (and subsequently by the state) of the right of way grant contained in § 8 of the Highway Act of 1866, now 43 U.S.C. § 932. *See* discussion *infra.*

3. 25 U.S.C. § 345 provides, in relevant part, that:

All persons who are in whole or in part of Indian blood or descent who are entitled to an allotment of land under any law of Congress, or who claim to be so entitled to land under any allotment Act or under any grant made by Congress, or who claim to have been unlawfully denied or excluded from any allotment or any parcel of land to which they claim to be lawfully entitled by virtue of any Act of Congress, may commence and prosecute or defend any action, suit, or proceeding in relation to their right thereto in the proper district court of the United States; and said district courts are given jurisdiction to try and determine any action, suit, or proceeding arising within their respective jurisdictions involving the right of any person, in whole or in part of Indian blood or descent, to any allotment of land under any law or treaty (and in said suit the parties thereto shall be the claimant as plaintiff and the United States as party defendant); * * *.

4. 25 U.S.C. § 311 provides that:

The Secretary of the Interior is authorized to grant permission, upon compliance with such requirements as he may deem necessary, to the proper State or local authorities for the opening and establishment of public highways, in accordance with the laws of the State or Territory in which the lands are situated, through any Indian reservation or through any lands which have been allotted in severalty to any individual Indian under any laws or treaties but which have not been conveyed to the allottee with full power of alienation.

5. 25 U.S.C. § 357 provides that:

Lands allotted in severalty to Indians may be condemned for any public purpose under the laws of the State or Territory where located in the same manner as land owned in fee may be condemned, and the money awarded as damages shall be paid to the allottee.

6. Appellants now contend that the district court also erred in reaching the merits of this case in view of the fact that an indispensable party, the United States, had not been joined. This issue was not raised in the district court. The United States was notified of this suit by the mailing of the complaint and summons by registered mail to the Attorney General of the United States, but the United States Attorney for the District of North Dakota was not served as required by 25 U.S.C. § 346 (1970). That statute further provides that when the United States does not respond, plaintiff shall

Appellants initially contend that the district court erred in denying their motion for a partial summary judgment which was based upon this court's holding in United States v. Bennett County, 394 F.2d 8 (8th Cir. 1968). We disagree. In *Bennett County* this court found that the land across which the county sought to build a section line road pursuant to the right of way across public lands granted by the Highway Act of 1866 was not subject to that Act by virtue of the fact that Indian title to the land had been continually recognized since the Treaty of Fort Laramie of 1851, 11 Stat. 749. 394 F.2d at 10–13. The instant case involves a wholly different fact situation.

■ The Bird Bears' allotment is located north and east of the Missouri River. The Indian title recognized in *Bennett County* that antedated the Highway Act concerned lands that lay south and west of the river. *See* Treaty of Fort Laramie of 1851, *supra*. The Bird Bears' allotment was not made part of the Fort Berthold Reservation until 1880. *See* Executive Order of July 13, 1880, I Kappler, Law and Treaties 883 (2d ed. 1904); Act of March 3, 1891, 26 Stat. 989. In 1866 the land currently held in trust for the Bird Bears was public land. Thus, the court's rationale in *Bennett County* regarding the status of the land at the time of the Highway Act is inapplicable here.[7]

■ Instead, we believe that the reasoning in Faxon v. Lallie Civil Township,

36 N.D. 634, 163 N.W. 531 (1917), is dispositive of this appeal. In that case, as here, the plaintiff sought compensation from the township for the road built across his land. The North Dakota Supreme Court found that the state's right to construct section line roads had vested prior to the setting aside of the land as an Indian reservation.[8]

Similarly, in the instant case the grant to the state under the Highway Act had vested prior to the inclusion of what is now the Bird Bear allotment in the Fort Berthold Reservation. There is no evidence to suggest that the rights in this land, which was clearly subject to the Highway Act's grant at the time the legislation was enacted, have been divested by subsequent Congressional action. Further, as stated by the North Dakota court in analyzing the scope and substance of the grant to the state made by the Highway Act:

It is * * * clear that the right granted to the state was not in the nature of a license, revocable at the pleasure of the grantor, but that highways once established over the public domain under and by virtue of the [Highway] act become vested in the public, who had an absolute right to the use thereof which could not be revoked by the general government, and that whoever thereafter took the title from the general government took it burdened with the highways so established.

163 N.W. at 533 (citations omitted). We are convinced that the grant of right of

---

not have judgment unless he establishes the claim by proof satisfactory to the court. No response was filed by the government in this case.

Under the circumstances and facts present in the instant case, we do not believe that the United States is an indispensable party without whose joinder complete relief cannot be granted. *Cf.* Fontenelle v. Omaha Tribe, 430 F.2d 143, 145–46 (8th Cir. 1970). Nor do we feel that the absence of the United States as a party will expose any party herein to multiple lawsuits or judgments. *See generally* Fed.R. Civ.P. 19(a). We further note that this court invited the Department of Justice to submit a

brief as amicus curiae in this matter. That invitation was declined.

7. The *Bennett County* decision also disposes of appellants' claim that reservation land is public land reserved for a public use and therefore not subject to the grant of right of way in the Highway Act, 43 U.S.C. § 932 (1970). *See* 394 F.2d at 12.

8. As mentioned above, the state of North Dakota (then the Territory of Dakota) accepted the grant of right of ways across public lands contained in the Highway Act in 1871. *See* Faxon v. Lallie Civil Township, 36 N.D. 634, 163 N.W. 531, 532 (1917).

ways initially attached to the land in question in 1866 and has been operative since that time.

We do not feel that the Bird Bears' status as Indian trust patentees alters this result in any respect. Appellants claim that 25 U.S.C. § 348 (1970) [9] flatly prohibits the burdening of allotted land with encumbrances such as the roads involved here. However, 25 U.S.C. §§ 311 and 357 expressly provide for the opening of such highways across individually allotted Indian land either with the permission of the Secretary of the Interior or after compliance with state condemnation procedures. *See* United States v. State of Minnesota, 113 F.2d 770 (8th Cir. 1940). Thus, it is clear that the "free of all charge or incumbrance whatsoever" language in § 348 is not to be taken literally, at least as it relates to the grant of right of ways.[10] Therefore, since the grant of a right of way over individually allotted land is not precluded by or inconsistent with Congressional Indian policy,[11] we find that the Highway Act, construed in connection with the various allotment statutes, compels the conclusion that the land involved here was allotted to the Bird Bears fully subject to the prior statutory grant of right of ways to the state.

Affirmed.

---

**9.** That statute provides in part that:

Upon the approval of the allotments provided for in sections 331–334 of this title, by the Secretary of the Interior, he shall cause patents to issue therefor in the name of the allottees, which patents shall be of the legal effect, and declare that the United States does and will hold the land thus allotted, for the period of twenty-five years, in trust for the sole use and benefit of the Indian to whom such allotment shall have been made, or, in case of his decease, of his heirs according to the laws of the State or Territory where such land is located, and that at the expiration of said period the United States will convey the same by patent to said Indian, or his heirs as aforesaid, in fee, discharged of said trust and free of all charge or incumbrance whatsoever: *Provided*, That the President of the United States may in any case in his discretion extend the period. * * *.

**10.** It would appear that the main reason for including this language in the statute was to restrict the allottees' power of alienation. *See* Arenas v. United States, 322 U.S. 419, 420–21, 64 S.Ct. 1090, 88 L.Ed. 1363 (1943); United States v. Oklahoma Gas Co., 318 U.S. 206, 211, 213, 63 S.Ct. 534, 87 L.Ed. 716 (1943).

**11.** The Supreme Court, in similar cases involving the trust relationship between Indians and the United States government, has sought to determine whether or not a specified activity or piece of legislation is consistent with the overall Indian policy. *See* Morton v. Ruiz, 415 U.S. 199, 236, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974); Mescalero Apache Tribe v. Jones, 411 U.S. 145, 156 n.12, 93 S.Ct. 1267, 36 L.Ed.2d 114 (1973); Squire v. Capoeman, 351 U.S. 1, 6, 76 S.Ct. 611, 100 L.Ed. 883 (1956).