1997 ND 119

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Rodney BROSSART, Defendant and Appellant.**

**Criminal No. 960331.**

Supreme Court of North Dakota.

June 24, 1997.

Terence P. Devine (argued), State's Attorney, Lakota, for plaintiff and appellee.

Fleming, DuBois & Trenbeath, Cavalier, for defendant and appellant; argued by Neil W. Fleming.

MESCHKE, Justice.

[¶ 1] Rodney Brossart appealed a jury conviction for plowing a section line. We reverse and remand for a new trial because the trial court incorrectly instructed the jury.

[¶ 2] Brossart farms land in sections 30 and 31 of Williams Township. He has regularly plowed across the unimproved section line between these sections, he says to control weeds and to make it more passable for travel. His father, too, had done so for many years.

[¶ 3] In spring 1996, someone complained to the Williams Township Board of Supervisors that the section lines between sections 30 and 31 in that township and between sections 25 and 36 in adjacent Dodd Township were not open for travel. The two township Boards established joint guidelines in a memo directing farmers to maintain a 35–foot–wide road that "[n]o person may obstruct or cultivate ... without first obtaining written permission from the Board of Township Supervisors." The Township Boards also planned to install steel fence posts every quarter mile along the section line road. The boards later revised the memo to say:

1. That a road be maintained to a minimum width of 16 feet wide which may not be cultivated during spring work or harvest.

2. That the owner/operator shall first obtain written permission from the appropriate township board before cultivating the road.

3. That the road not be obstructed in any ma[nn]er regardless how temporary.

This revised memo did not mention fence posts along the road. The guidelines were meant to "insure the free flow of traffic with the resulting benefits to the public," and to fulfill the townships' duty to remove "obstructions in a highway."

[¶ 4] After receiving the memos, Brossart again plowed and seeded his section line. The State then criminally charged Brossart with

OBSTRUCTING HIGHWAY

in violation of Section 24–12–02, of the NDCC, by then and there willfully and knowingly did obstruct or plow, cultivate, or cause to be obstructed or plowed, cultivated, any public highway or right of way, and to obstruct usual travel on the public highway or right of way, without the permission of the officials having jurisdiction over such highway, to wit: the Defendant did plow or cultivate the section line road lying between Sections 30 and 31, of Williams Township, Nelson County, North

Dakota, without permission of the Williams Township Board so as to obstruct usual travel.

At his trial, Williams Supervisor Jerry Anderson testified Brossart's section line had been plowed again after the townships· sent out their ·memos. But he admitted farmers commonly work and seed section lines, especially those without improved roads or trails. Dodd Supervisor David Schindele testified neither township maintained a road on this section line, and a single crossing and drainage culvert in Dodd was the only improvement along these connected section lines.

[¶ 5] William Franzen used this section line to get to some of his farm land, and he testified Brossart once said he was going to close it. According to Franzen, Brossart also said farmers would have to pay for his lost crops if they wanted a road there. Franzen testified Brossart usually farmed the section line and sometimes parked machinery on it. But Franzen conceded he never had trouble traveling it and that he also plowed the section lines where he farmed. He was more concerned with Brossart's statements than his plowing.

[¶ 6] James Anderson, a custom combiner, also traveled this section line with a combine so wide that it crushed crops along the narrow path, but he usually slowed down to near half-speed to avoid greater crop damage. Anderson confirmed it was common to travel on a planted section line like this one.

[¶ 7] Brossart admitted he plowed and seeded his section line after receiving the townships' memos and without written permission from either township. Brossart claimed he had talked to Dodd Township Supervisor Bill Fossen, who wanted the road worked down and made passable. Brossart testified he worked the section line to make it more passable. He insisted he had never prevented anyone from traveling on it.

[¶ 8] At the close of evidence, Brossart moved for a judgment of acquittal, urging that plowing a section line was not a crime under subsection 4 of NDCC 24–12–02 unless actual obstruction resulted, but the court denied an acquittal. Brossart then asked the trial court to instruct the jury on the entire statute.[1] The trial court refused and only instructed on subsection 2. The jury found Brossart guilty, and he appealed.

[¶ 9] Brossart argues the trial court erred in denying his motion for acquittal and in instructing the jury incorrectly. He asserts plowing the section line is a common practice that, by itself, does not violate NDCC 24–12–02 because, after this Court decided a similar case, the Legislature amended this section to add a new subsection 4 that now allows section line plowing if it does not obstruct usual travel. *State v. Silseth*, 399 N.W.2d 868 (N.D.1987). In view of this amendment, Brossart asks us to reconsider our prior holding.

[¶ 10] NDCC 24–12–02(2) prohibited obstructing *or* plowing up any public highway or right of way without permission. In *State v. Silseth*, a farmer was convicted of violating NDCC 24–12–02(2) for plowing a section line. On appeal, he argued the statute covered public highways and not section lines occasionally traveled, and he urged that the Legislature could not have intended to prohibit farming those section lines. *Id.* at 869–70. Silseth urged that plowing a section line without actually obstructing usual travel did not violate the law. *Id.* at 870. A majority of this Court rejected Silseth's arguments, applied the prohibition against plowing to a section line, and ruled "Silseth violated that statute when he admittedly plowed the entire width of the section line." *Id.*

---

1. **Obstructing highways.** No person may:
   1. Obstruct any public highway in any manner with intent to prevent the free use thereof by the public;
   2. Willfully and knowingly obstruct or plow up, or cause to be obstructed or plowed up, any public highway or right of way, except by order of the officials having jurisdiction over such highway for the purpose of working or improving the same;
   3. Build or place a barbed wire fence across any well-traveled trail which has been the usual and common route of travel for not less than one year without placing on the outside of the top tier of barbed wire on said fence a board, pole, or other suitable protection, to be at least sixteen feet [4.88 meters] in length; or
   4. Plow up a section line in a manner so as to obstruct usual travel on the section line.

[¶ 11] While concurring, then Chief Justice Erickstad expressed a hope the Legislature would "amend [the statute] to permit plowing of section lines when plowing would not obstruct the usual travel on the section line." *Id.* Justice Gierke, joined by Justice Meschke, dissented because he believed the majority's holding that Silseth violated the statute "by the mere act of plowing up his section line" was "too harsh a reading and too unjust an interpretation of the statute." *Id.* at 870–71. Justice Gierke reasoned the Legislature only intended to punish plowing that impeded usual travel on a section line and had not meant to prevent plowing that improved travel:

> It appears from the stipulated facts on appeal that Silseth, instead of obstructing the section line, took actions which improved the public's right-of-way over his property.... [T]here was extensive testimony regarding the effect of Silseth's cultivating the section line. This testimony revealed that not only did Silseth's plowing *not* obstruct the section line, but by working the soil Silseth actually *improved* the easement road and made traversing his property easier.
>
> . . .
>
> ... It is clear from the entire text of the statute that what the Legislature intended by enacting § 24–12–02(2), N.D.C.C., was a proscription against the actual interference in the free use of a section line easement and not to hold individuals criminally liable for plowing up a section line if it improves or at least has no adverse effect on the public's access and ability to traverse it. ... It is apparent that the object of § 24–12–02, N.D.C.C., is to prevent individuals from blocking or obstructing section lines to the detriment of the existing public easement. Justice is not served by reading the statutory language in such a manner that holds an individual criminally liable simply because he has plowed up his section line, especially where that act actually improves the easement for travel. I am directed by § 1–02–38, N.D.C.C., to read the intent of § 24–12–02 as requiring some intentional act which actually obstructs and hinders public access across the section line. Such a reading is the just and reasonable one, which results in the feasible execution of § 24–12–02, N.D.C.C., and which favors the public interest. I cannot believe that the North Dakota Legislature, in enacting Section 24–12–02 intended to make every farmer who cultivates a section line in this State guilty of a criminal offense, regardless of whether the cultivation in any way obstructs travel by the public....

*Id.* at 871–72 (footnote omitted). Justice Gierke, too, hoped the Legislature would amend the statute to overcome the effect of the majority holding.

[¶ 12] The *Silseth* decision was issued in January 1987. Soon after, the 1987 legislative session amended NDCC 24–12–02 to add the new subsection 4 that directed no person may "[p]low up a section line in a manner so as to obstruct usual travel on the section line." 1987 N.D. Laws ch. 322, § 1. Legislative history says "the intent of the bill was to address the situation of a previous court case." *House Agriculture Committee Minutes,* S.B. 2560 (April 17, 1987). Brossart urges the "previous court case" was obviously *Silseth.* We agree. The 1987 amendment clearly responded to *Silseth.* Coming soon after our *Silseth* decision, the amendment used almost the same phrasing that then Chief Justice Erickstad's concurrence suggested.

[¶ 13] But it is less clear what the Legislature meant to accomplish by adding subsection 4 without revising subsection 2. Brossart argues the new subsection permits section line plowing when it does not obstruct usual travel, regardless of what subsection 2 says. The State argues it only allows plowing on section lines not normally traveled. *State v. Pippin,* 496 N.W.2d 50, 52 (N.D.1993), explained interpretation of a statute is a legal question that is fully reviewable by this Court.

[¶ 14] Statutory interpretation seeks to locate the Legislature's intent. *Reed v. Hillsboro Pub. Sch. Dist. No. 9,* 477 N.W.2d 237, 240 (N.D.1991); *County of Stutsman v. State Historical Soc'y,* 371 N.W.2d 321, 325 (N.D.1985). If a statute is

ambiguous or of doubtful meaning, extrinsic aids can be used to identify the legislative intent. *Id.* We construe an ambiguous criminal statute against the government and in favor of the accused. *Pippin,* 496 N.W.2d at 52; *State v. Plentychief,* 464 N.W.2d 373, 375 (N.D.1990); *State v. Hogie,* 424 N.W.2d 630, 635 (N.D.1988). The State argues this statute is clear and unambiguous. We disagree.

■ [¶ 15] While subsection 2 and 4 may each seem unambiguous when read separately, statutes that are clear and unambiguous when read apart can be ambiguous when read together for particular facts. *Kroh v. American Family Ins.,* 487 N.W.2d 306, 308 (N.D.1992). Here, NDCC 24–12–02(2) originally prohibited plowing a public highway, including a section line, without permission from the authority with jurisdiction over the highway. NDCC 24–12–02(4), however, now permits section line plowing if usual travel is not obstructed without expressly requiring permission from the jurisdictional authority. We conclude the two subsections are ambiguous when read together for a case like this.

[¶ 16] We have confronted similar statutory ambiguities before. In one case, we construed NDCC 57–19–06 limiting a school district's use of its special reserve funds. *Reed v. Hillsboro Pub. Sch. Dist. No. 9,* 477 N.W.2d at 239–40. Originally, a district could only withdraw special funds for teacher salaries, heat, light, and fuel. The Legislature later amended this section by adding a new, separate subsection allowing a district to withdraw fifty percent of the special funds. We concluded the statute was ambiguous because it was unclear whether the new subsection allowed fund withdrawals for any purpose other than the limited ones first authorized. *Id.* at 240. Using extrinsic aids to identify the legislative intent, we concluded the Legislature did not intend the withdrawal restriction in the first subsection to apply to withdrawals under the second subsection that did not specify the same restrictions. *Id.* at 241–42.

[¶ 17] Here, also, the text and structure of NDCC 24–12–02 do not clearly tell us whether the Legislature intended the limitation in subsection 2, "except by order of the officials having jurisdiction," to apply to the added subsection 4. We thus must decide whether the Legislature intended that a farmer must first get permission from the local authority before plowing a section line even when the plowing does not obstruct usual travel. To construe the new subsection, we rely on the aids for statutory construction suggested by NDCC 1–02–39, including the statute's purpose, the circumstances of the statute's enactment, the legislative history, the shape of the former statute, and the consequences of a particular construction.

[¶ 18] As Justice Gierke explained in *Silseth,* the overall object of NDCC 24–12–02 is to prohibit obstructions to travel. The townships' memos expressed that purpose, too: "The purpose of this policy is to help insure the free flow of traffic with the resulting benefits to the public. The board of township supervisors has a specific statutory obligation to cause obstructions in a highway to be removed forthwith." This was recognized again when the State charged that Brossart "did plow or cultivate the section line . . . so as to obstruct usual travel." We conclude NDCC 24–12–02(4) was intended to permit plowing unimproved section lines when it does not interfere with the usual travel there.

[¶ 19] The State argues NDCC 24–12–02(4) only permits plowing on section lines rarely used for travel. Still, the new subsection was a response to our decision in *State v. Silseth,* where Silseth plowed a traveled, though unimproved, section line, and a jury convicted him even though the evidence showed that his plowing did not impede travel. 399 N.W.2d 868. The Legislature created subsection 4 to avoid the *Silseth* result.

[¶ 20] The legislative sponsor of a delayed bill to amend NDCC 24–12–02, Senator Floyd Stromme, first proposed removing the words "or plow up" from subsection 2, so that only obstructing a public highway would be a statutory offense. *Senate Agriculture Committee Minutes,* S.B. 2560 (April 13, 1987). The North Dakota Highway Department objected because allowing farmers to plow close to paved highways or graded roads would cause drainage and snow accumulation problems. *Id.* To meet this objection, Senator Earl Kelly suggested another

subsection that "would pertain not to public highways but to section lines, undeveloped roads, etc." *Id.* The Senate Committee voted against removing "or plow up" from subsection 2. *Id.*

[¶ 21] Senator Stromme then apparently adopted Senator Kelly's suggestion by proposing a revision leaving "or plow up" in subsection 2, and adding a new subsection for section lines alone. *House Agriculture Committee Minutes*, S.B. 2560 (April 16, 1987). A staff person explained the effect of the change:

> Originally as drafted, [the bill] was drafted to delete the words "or plow up"[;] unfortunately that struck to[o] broadly and that would have affected public highways which section lines are [also] considered to be. They created a new subsection that is more specific than the more general subsection 2. Subsection 2 applies to the obstructing or plowing up of public highways or right of ways. Subsection 4 would provide that an individual may not plow a section line [so as to obstruct usual travel].

*Id.* (April 17, 1987). Not completely satisfied, Representative Mertens suggested a new code section that pertained solely to unimproved roadways, and Representative Melby suggested a subsection covering undeveloped section lines. *Id.* The same staff person responded that "undeveloped" was an unnecessary distinction because all section lines are open for travel regardless of their condition. *Id.*[2] Finally, the *House Minutes* of April 17, 1987, reflect that Representative Kretschmar recommended passing the bill because "there is a difference in new subsection 4 language and subsection 2, which prohibits plowing of highways," while "subsection 4 would allow the plowing on a section line if the fact shows it doesn't obstruct the usual travel."

[¶ 22] This legislative history confirms the amendment was intended to permit plowing unimproved and traveled section lines if it does not "obstruct usual travel," while continuing the prohibition against plowing along improved public highways "except by order of the officials having jurisdiction." Although this amendment might have been more artfully crafted, we give effect to every part of a statute. *See Heck v. Reed,* 529 N.W.2d 155, 161 (N.D.1995)("Because the statute was amended after this court construed the predecessor statute ..., we may also presume that the legislature was responding to that construction."); *State v. Beilke,* 489 N.W.2d 589, 592 (N.D. 1992)("When the legislature amends an existing statute, it indicates its intent to change the statute's meaning in accord with its new terms."); *District One Republican Comm. v. District One Democrat Comm.,* 466 N.W.2d 820, 824 (N.D.1991)(Conflicting provisions "should be construed, if possible, to avoid an irreconcilable conflict and give effect to both provisions."). We also interpret a statute to avoid absurd results. *State v. Huber,* 555 N.W.2d 791, 794 (N.D.1996). If we required a farmer to request permission from a township board before plowing any unimproved though traveled section line, NDCC 24–12–02(4) would not apply anywhere. Construing subsection 4 to be ineffective would lead to an especially absurd result when the section line plowing actually improved travel.

[¶ 23] Other principles of statutory construction support this interpretation. When two statutory provisions conflict, a special provision prevails over a general provision. NDCC 1–02–07. And the clause last in order of date or position prevails when two statutory clauses are irreconcilable. NDCC 1–02–08. Here, NDCC 24–12–02(4) conflicts with NDCC 24–12–02(2), is the more specific, and

---

2. *See* NDCC 24–07–03: "In all townships in this state, outside the limits of incorporated cities, ... platted townsites, additions, or subdivisions ..., the congressional section lines are public roads, open to the width of thirty-three feet ... on each side of such section lines," subject to the power of the board of county commissioners to close those "not used for ten years," "not traveled due to natural obstacles or difficulty of terrain," "not required due to readily accessible alternate routes of travel," or not needed when "intersect- ed by interstate highways causing ... a dead end." This section originates from the Territory of Dakota laws in 1870–71 under an 1866 Congressional enactment. *Small v. Burleigh County,* 225 N.W.2d 295, 296 (N.D.1974). *Small* recognized that "the rights of the public to section line highways ... are easements only, limited to the right to travel and other rights incident thereto, and the owner of the adjoining land owns the fee title to the property included in the 33 foot easement up to the section line." *Id.* at 297.

was more recently added to the end of the section. Moreover, as we explained again in *State v. Rohrich*, 450 N.W.2d 774, 776 (N.D. 1990), we generally resolve ambiguities in criminal statutes in favor of the accused.

[¶ 24] The State argues a township board has "general supervision over the roads, highways, and bridges throughout the township" under NDCC 24–06–01, so NDCC 24–12–02(4) cannot limit the board's authority over a section line. Therefore, the State urges, this section line remains subject to NDCC 24–12–02(2) because the township boards declared it to be a "road" and had made improvements on it. We disagree. Subsection 4 does not limit a township board's authority over a traveled section line by allowing it to be plowed without permission when that activity does not obstruct usual travel. The township remains authorized to improve, maintain, and regulate the road as the extent of travel requires. We do not believe the extent of travel or the limited actions of these township boards made this unimproved section line into the kind of "public highway" subject to subsection 2. Of course, this would be a different case if the boards had fenced this as a road as they first contemplated, but an isolated crossing and culvert did not improve this section line enough to impose the restriction in subsection 2.

[¶ 25] We conclude Brossart did not violate NDCC 24–12–02 by simply plowing his section line, but that conclusion does not wholly acquit him. Because the trial court's instructions to the jury were incorrect by instructing on subsection 2 and not on subsection 4, we cannot know precisely why Brossart was convicted. Some evidence at trial indicated he had parked machinery on the section line or otherwise acted to obstruct usual travel.[3] Thus, the jury might have properly convicted Brossart of obstructing usual travel if correctly instructed. We reverse and remand for a new trial with correct instructions.

[¶ 26] Jury instructions must adequately inform the jury about the applicable law and must not mislead the jury. *State v. Thompson*, 504 N.W.2d 838, 841 (N.D.1993). In determining whether jury instructions are misleading, we consider the instructions as a whole. *State v. McIntyre*, 488 N.W.2d 612, 614 (N.D.1992). As we held in *Thompson*, 504 N.W.2d at 841, we will reverse a criminal conviction only if the jury instructions as a whole are erroneous, the error relates to a subject central to the case, and it affects the substantial rights of the accused.

[¶ 27] Brossart sought an instruction on the entire text of NDCC 24–12–02. The State argues it would have been error to instruct on the entire section because the complaint did not charge Brossart with violating NDCC 24–12–02(1) or (3). We agree that it would have been incorrect to instruct the jury on subsections 1 or 3. *See State v. Heasley*, 196 N.W.2d 896, 902 (N.D.1972)(instruction defining the charged crime erroneously included a statutory subsection not charged); *see also State v. Eagle Hawk*, 411 N.W.2d 120, 124–25 (S.D.1987)(unnecessary to instruct on entire child abuse statute when instruction coordinated with charge in indictment); *Turner v. State*, 506 N.E.2d 827, 829 (Ind.1987)(trial court not required to instruct on entire robbery statute when parts do not apply to case). One scholar succinctly explains when and why a trial court should not instruct on the entire text of a criminal statute:

> Single statutes may have alternative crimes. A careless reading of all portions of such a statute would inform the jury of offenses with which the defendant is not charged and would permit it to find him guilty of an offense not described in the indictment.

Robert L. McBride, *The Art of Instructing the Jury* § 8.07, at 300 (1969). *NDRCrimP 30(a)* directs that a "court shall instruct the jury only as to the law of the case." A trial court should normally instruct only on the specific offense charged.

[¶ 28] Any instruction must be tailored to the criminal charge, and adjusted to

---

**3.** While one who plows or plants a traveled section line must expect some crop damage in the path of usual travel, farming will often facilitate both travel and agriculture by keeping the ground level, eliminating brush and weeds, and increasing crop yields. Yet, a farmer must be careful not to plant a sizeable crop that actually impedes usual travel on a section line.

the evidence. 75A Am.Jur.2d *Trial* § 1178 (1991). Conduct alleged in the complaint, but not supported by the evidence, should not be included in the instruction defining the offense. Edward J. Devitt et. al., *Federal Jury Practice and Instructions* § 13.03, at 388 (4th ed. 1992). As we instructed in *State v. Clinkscales,* 536 N.W.2d 661, 664 (N.D. 1995): "Jury instructions should be limited to those crimes a reasonable view of the evidence will sustain."

[¶ 29] Here, the trial court should not have instructed on the inapplicable subsection 2. The trial court did not explain why it did not instruct on subsection 4, though the court might have thought there was no evidence of obstructing usual travel. If that is why, we disagree because some, though certainly not overwhelming, evidence indicated Brossart may have obstructed travel. Because the trial court failed to correctly instruct, we reverse Brossart's conviction.

[¶ 30] We remand for a new jury trial with correct instructions consistent with this opinion.

[¶ 31] VANDE WALLE, C.J., and MARING, NEUMANN and SANDSTROM, JJ., concur.

